IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INCEPTION MINING, INC., a Nevada Corporation; MICHAEL AHLIN, an individual; and TRENT D'AMBROSIO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DANZIG, LTD., a North Carolina Corporation; ELLIOT FOXCROFT, an individual; and BRETT BERTOLAMI, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS**<br><br><br>Case No. 2:17-cv-00944-DN<br><br>District Judge David Nuffer |

Plaintiffs initiated this case seeking declaratory and injunctive relief relating to arbitration proceedings pending in Salt Lake City, Utah and Boston, Massachusetts (respectively, the "SLC Arbitration" and the "Boston Arbitration").[1] Defendants seek dismissal of Plaintiffs' Complaint arguing (1) subject matter jurisdiction is lacking or venue is improper based on the Federal Arbitration Act and the parties' binding agreements to arbitrate; and (2) jurisdiction should be declined in favor of a first-filed federal case pending in the Western District of North Carolina (the "North Carolina Case").[2]

Because subject matter jurisdiction exists and venue is proper to determine whether Plaintiffs Michael Ahlin and Trent D'Ambrosio (the "Individual Plaintiffs") may be required to

---

[1] Complaint, docket no. 4, filed Aug. 22, 2017.

[2] Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), docket no. 14, filed Sept. 19, 2017.

arbitrate in the SLC Arbitration, Defendants' Motion to Dismiss[3] is DENIED in part. However, because issues of arbitrability in the SLC Arbitration are to be decided by the arbitrator, Defendant's Motion to Dismiss[4] is GRANTED in part. Additionally, determination on Defendants' Motion to Dismiss[5] is STAYED as to Plaintiffs' claims concerning the Boston Arbitration pending the resolution of a motion to dismiss for lack of personal jurisdiction filed in the North Carolina Case.

**Contents**
BACKGROUND ....................................................................................................................... 3
    The Contracts ................................................................................................................. 3
    The SLC Arbitration ...................................................................................................... 3
    The Boston Arbitration .................................................................................................. 4
    The North Carolina Case ............................................................................................... 4
    Plaintiffs' Complaint...................................................................................................... 5
DISCUSSION ........................................................................................................................... 6
    Subject matter jurisdiction exists and venue is proper to determine whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration ............................... 6
        The arbitrator determines arbitrability of claims against signatories to the Foxcroft Agreement.......................................................................................................... 7
        This court has jurisdiction to decide whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration................................................ 9
    Issues of arbitrability concerning the signatories to the Foxcroft Agreement are to be decided by the arbitrator in the SLC Arbitration ................................................. 10
    Determination on Defendants' Motion to Dismiss is stayed as to Plaintiffs' claims concerning the Boston Arbitration........................................................................ 10
ORDER .................................................................................................................................... 14

---

[3] *Id*.

[4] *Id*.

[5] *Id*.

2

## BACKGROUND

Plaintiffs' claims in this case relate to four contracts, two arbitration proceedings, and a first-filed federal case.[6]

### The Contracts

The four contracts at issue in this case are:

- a consulting agreement entered between Inception Mining, Inc. and Elliot Foxcroft on March 27, 2014 (the "Foxcroft Agreement");[7]

- a consulting agreement entered between Gold American Mining Corp. and Danzig, Ltd. on February 25, 2013 (the "Danzig Agreement");[8]

- an asset purchase agreement entered between Inception Resources, LLC and Gold American Mining Corp., Inception Development Inc., and Brett Bertolami on February 25, 2013 (the "Asset Purchase Agreement");[9] and

- a debt exchange agreement entered between Gold American Mining Corp. and Bret Bertolami on February 25, 2013 (the "Debt Exchange Agreement").[10]

### The SLC Arbitration

On July 20, 2017, Elliot Foxcroft initiated an arbitration proceeding with the American Arbitration Association ("AAA") in Salt Lake City, Utah against Inception Mining, Inc., Michael Ahlin and Trent D'Ambrosio (the "SLC Arbitration").[11] In the SLC Arbitration, Mr. Foxcroft alleges claims relating to the Foxcroft Agreement, including: federal securities fraud; Utah securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary

---

[6] Complaint ¶¶ 10-11, 22-23, 29, 40.

[7] Docket no. 4-1, filed Aug. 22, 2017.

[8] Docket no. 4-2, filed Aug. 22, 2017. Gold American Mining Corp. is now known as Inception Mining, Inc. Complaint ¶¶ 25, 27-28, 32a.

[9] Docket no. 4-3, filed Aug. 22, 2017.

[10] Docket no. 4-4, filed Aug. 22, 2017.

[11] Complaint ¶ 10.

duty; negligent misrepresentation; and breach of the implied covenant of good faith and fair dealing.[12]

### The Boston Arbitration

On June 12, 2017, Danzig, Ltd. initiated an arbitration proceeding with the AAA in Boston, Massachusetts against Inception Mining, Inc., Michael Ahlin and Trent D'Ambrosio (the "Boston Arbitration").[13] In the Boston Arbitration, Danzig, Ltd. alleges claims relating to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement, including: federal securities fraud; North Carolina securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary duty; and negligent misrepresentation.[14]

### The North Carolina Case

On January 23, 2017, Danzig, Ltd. and Brett Bertolami filed a lawsuit in the United States District Court, for the Western District of North Carolina against Inception Mining, Inc., Michael Ahlin, and Trent D'Ambrosio (*Danzig, Ltd. et al. v. Inception Mining, Inc. et al.*, case no. 5:17-cv-00018-RJC-DSC—the "North Carolina Case").[15] In the North Carolina Case, Danzig, Ltd. and Mr. Bertolami allege claims relating to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement, including: federal securities fraud; North Carolina securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary duty; and negligent misrepresentation.[16]

---

[12] *Id*. ¶¶ 10-11; Initial Statement of Claim ("SLC Statement of Claim") ¶¶ 33-71, [docket no. 14-6](), filed Sept. 19, 2017.

[13] Complaint ¶ 22.

[14] *Id*. ¶¶ 22-23, 29; Initial Statement of Claim ("Boston Statement of Claim") ¶¶ 61-95, [docket no. 14-7](), filed Sept. 19, 2017.

[15] Complaint ¶ 40.

[16] *Id*. ¶¶ 40, 42-43; First Amended Complaint ("North Carolina Complaint") ¶¶ 64-98, [docket no. 14-4](), filed Sept. 19, 2017.

## Plaintiffs' Complaint

Plaintiffs initiated this case on August 22, 2017.[17] Plaintiffs' Complaint alleges three claims against Defendants.[18] Plaintiffs' first claim seeks declaratory judgment that:

(a) the Individual Plaintiffs are not proper parties to the SLC Arbitration; and

(b) only disputes between Inception Mining, Inc. and Elliot Foxcroft may be arbitrated in the SLC Arbitration.[19]

Plaintiffs' second claim seeks declaratory judgment that:

(a) the Individual Plaintiffs are not proper parties to the Boston Arbitration;

(b) claims under the Asset Purchase Agreement and the Debt Exchange Agreement are not properly the subject of the Boston Arbitration;

(c) the exclusive dispute resolution forum under the Danzig Agreement is arbitration; and

(d) the exclusive dispute resolution forum for claims under the Asset Purchase Agreement is arbitration in Salt Lake City, Utah before an arbitrator with five years of experience in the gold mining industry.[20]

And Plaintiffs' third claim seeks injunctive relief:

(a) enjoining Danzig, Ltd. and Brett Bertolami from asserting claims under the Asset Purchase Agreement in any court;

(b) enjoining Danzig, Ltd. and Brett Bertolami from asserting claims under the Danzig Agreement in any court;

(c) enjoining Defendants from asserting claims under the Debt Exchange Agreement in any arbitration brought under the Foxcroft Agreement, the Danzig Agreement or the Asset Purchase Agreement; and

(d) enjoining Defendants from asserting any claims under the Foxcroft Agreement, the Danzig Agreement, the Asset Purchase Agreement or the Debt Exchange Agreement against the Individual Plaintiffs.[21]

---

[17] Complaint.

[18] *Id.* ¶¶ 10-47.

[19] *Id.* ¶ 19.

[20] *Id.* ¶ 37.

[21] *Id.* ¶¶ 44-47.

## DISCUSSION

### Subject matter jurisdiction exists and venue is proper to determine whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[22] "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute[.]"[23] "But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value." And "[w]hen a plaintiff's claim is subject to arbitration, federal courts lack subject matter jurisdiction to entertain the action."[24]

Plaintiffs' first claim seeks declaratory judgment that the Individual Plaintiffs are not proper parties to the SLC Arbitration, and that only disputes between Inception Mining, Inc. and Elliot Foxcroft may be arbitrated in the SLC Arbitration.[25] Additionally, a portion of Plaintiffs' third claim seeks to enjoin Defendants from asserting any claims under the Foxcroft Agreement against the Individual Plaintiffs.[26] Defendants argue that subject matter jurisdiction over these claims is lacking or venue is improper because the Foxcroft Agreement contains an arbitration clause under which the parties agreed that issues of arbitrability are to be decided by an arbitrator.[27]

---

[22] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted).

[23] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[24] *Adams v. Burlington Northern R.R. Co.*, 838 F.Supp. 1461, 1464 (D. Kan. 1993) (citing *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 650 (6th Cir. 1987)).

[25] Complaint ¶ 19.

[26] *Id*. ¶ 47.

[27] Motion to Dismiss at 2, 12; Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Reply") at 1-2, docket no. 29, filed Oct. 31, 2017.

**The arbitrator determines arbitrability of claims against signatories to the Foxcroft Agreement**

"[W]ho—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration."[28] This is because when a party "ask[s] a court to review the arbitrator's decision . . . the court will set that decision aside only in very unusual circumstances."[29]

In answering "the 'who' question (*i.e.*, the standard-of-review question)[,]" the Supreme Court held that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."[30] "[W]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'"[31]

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[32] However, the Supreme Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."[33]

---

[28] *First Options of Chicago, Inc.*, 514 U.S. at 942.

[29] *Id*.

[30] *Id*. (internal citations omitted, emphasis in original).

[31] *Belnap v. Lasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

[32] *First Options of Chicago, Inc.*, 514 U.S. at 944.

[33] *Id.* (internal quotations and punctuation omitted).

Tenth Circuit precedent dictates that a "clear and unmistakable intent to arbitrate arbitrability . . . may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration[.]"[34]

The SLC Arbitration involves claims relating to the Foxcroft Agreement.[35] The Foxcroft Agreement contains the following arbitration clause:

> This Agreement shall be governed by and construed under the laws of the State of Utah without regard to principals of conflicts of laws provisions. In the event of any dispute between Company and Consultant arising under or pursuant to the terms of this Agreement, or any matters arising under the terms of this Agreement, the same shall be settled only by arbitration through [AAA] located in Salt Lake City, Utah, in accordance with the Code of Arbitration Procedure published by the [AAA]. The determination of the arbitrators shall be final and binding upon Company and Consultant and may be enforced in any court of appropriate jurisdiction. [36]

Under AAA rules, decisions of arbitrability are conferred on the arbitrator: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[37] Therefore, by specifying that arbitration shall be in accordance with AAA rules, the Foxcroft Agreement's arbitration clause reflects a clear and unmistakable intent that the parties to the contact agreed to arbitrate arbitrability.[38]

---

[34] *Belnap*, 844 F.3d at 1290.

[35] Complaint ¶¶ 10-11; SLC Statement of Claim ¶¶ 33-71.

[36] Foxcroft Agreement at 2, ¶ 6. The Foxcroft Agreement identifies Inception Mining, Inc. as the "Company" and Elliot Foxcroft as the "Consultant." *Id*.

[37] R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013); *Belnap*, 844 F.3d at 1283-84.

[38] *Belnap*, 844 F.3d at 1290.

**This court has jurisdiction to decide whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration**

However, the Foxcroft Agreement does not identify the Individual Plaintiffs as parties to the contract. Rather, it identifies only Inception Mining, Inc. and Elliot Foxcroft as parties.[39] Michael Ahlin executed the Foxcroft Agreement, but on behalf of Inception Mining, Inc. as its "CEO," not in his individual capacity.[40] Trent D'Ambrosio did not execute the Foxcroft Agreement and his name does not appear anywhere in the contract. Moreover, the Foxcroft Agreement contains no reference to rights or obligations of the Individual Plaintiffs under the contract, or benefits flowing to the Individual Plaintiffs in their individual capacity. Therefore, there is no clear and unmistakable evidence that the Individual Plaintiffs agreed to be bound by the Foxcroft Agreement or its arbitration clause.

Defendants argue the Individual Plaintiffs are nevertheless bound by the Foxcroft Agreement's arbitration clause based on theories of estoppel and agency.[41] But Defendants did not raise this argument until their Reply, and the argument goes to the substantive merit of Plaintiffs' claims, not whether jurisdiction and venue are proper for Plaintiffs claims. Therefore, the argument will not be addressed in this Memorandum Decision and Order.

In the absence of clear and unmistakable evidence that the Individual Plaintiffs' agreed to arbitrate issues of arbitrability under the Foxcroft Agreement, subject matter jurisdiction exists and venue is proper to determine whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration.

---

[39] Foxcroft Agreement at 1.

[40] *Id*. at 3.

[41] Reply at 2-6.

### Issues of arbitrability concerning the signatories to the Foxcroft Agreement are to be decided by the arbitrator in the SLC Arbitration

As discussed, the parties to the Foxcroft Agreement agreed to arbitration "in accordance with the Code of Arbitration Procedure published by the [AAA.]"[42] And because AAA rules confer decisions of arbitrability on the arbitrator,[43] there is a clear and unmistakable intent that the signatories to the Foxcroft Agreement agreed to arbitrate arbitrability.[44]

A portion of Plaintiffs' third claim seeks to enjoin Defendants from asserting claims under the Debt Exchange Agreement in any arbitration brought under the Foxcroft Agreement.[45] This requested relief goes directly to a determination of the scope of the Foxcroft Agreement's arbitration clause and the arbitrability of claims in the SLC Arbitration. Therefore, this portion of Plaintiffs' third claim is an issue of arbitrability that is for the arbitrator in the SLC Arbitration to decide, and subject matter jurisdiction is lacking.[46]

### Determination on Defendants' Motion to Dismiss is stayed as to Plaintiffs' claims concerning the Boston Arbitration

Plaintiffs' second claim and the remaining portions of their third claim relate to the Boston Arbitration and involve the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement.[47] Defendants argue that jurisdiction over these claims should be declined in favor of the North Carolina Case because it was the first-filed federal case.[48]

---

[42] Foxcroft Agreement at 2, ¶ 6.

[43] R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013).

[44] *Belnap*, 844 F.3d at 1290.

[45] Complaint ¶ 46.

[46] *Belnap*, 844 F.3d at 1280; *Adams*, 838 F.Supp. at 1464.

[47] Complaint ¶¶ 21-38, 44-47.

[48] Motion to Dismiss at 3-4, 12-13; Reply at 6-9.

"Federal courts have recognized that, as courts of coordinate jurisdiction and equal rank, they must be careful to avoid interfering with each other's affairs in order 'to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'"[49] "To aid in achieving this goal, the 'first-to-file' rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same parties has previously been filed in another district court."[50]

But "simply because a court is the first to obtain jurisdiction does not necessarily mean that it should decide the merits of the case."[51] "[T]he first federal action is generally given priority[] absent a showing of greater convenience or special circumstances that favor the second action[.]"[52] "District courts are afforded discretion when deciding whether the first-to-file rule or an exception to that rule applies to the case at hand."[53]

Plaintiffs argue this case is not substantially similar to the North Carolina Case because Elliot Foxcroft is not a party to the North Carolina Case and the Foxcroft Agreement is not at issue in the North Carolina Case.[54] This is correct. And for this reason, jurisdiction over Plaintiffs' claims relating to the SLC Arbitration and the Foxcroft Agreement will not be deferred in favor of the North Carolina Case.

---

[49] *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, *2 (10th Cir. 1999) (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)).

[50] *Id*.

[51] *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir. 1982).

[52] *In re Telluride Glob. Dev., LLC*, 380 B.R. 585, 593 (B.A.P. 10th Cir. 2007) (citing *Bradley v. Kelly*, 479 F.Supp.2d 281, 284 (D. Conn. 2007)).

[53] *MedSpring Grp., Inc. v. Atl. Healthcare Grp., Inc.*, 2006 WL 581018, *3 (D. Utah Mar. 7, 2006) (citing *Columbia Pictures Indus., Inc. v. Schneider*, 435 F.Supp. 742, 747 (S.D.N.Y. 1977)).

[54] Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint ("Response") at 11-12, docket no. 25, filed Oct. 17, 2017.

However, the North Carolina Case is nearly identical to the Boston Arbitration. Except for Brett Bertolami not being a party to the Boston Arbitration, the North Carolina case and Boston Arbitration involve the same parties.[55] And they involve the same claims relating to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement.[56] Plaintiffs' second claim and the remaining portions of their third claim seek declaratory and injunctive relief relating to the same subject matter of the North Carolina Case and the Boston Arbitration.[57] Indeed, the declaratory relief Plaintiffs seek with their second claim is in essence a defense to the claims brought against them in the North Carolina Case. Moreover, the relief Plaintiffs seek with the remaining portions of their third claim would enjoin aspects of the proceedings in both the North Carolina Case and the Boston Arbitration.[58]

The first-to-file rule and its exceptions "prevent a misuse of litigation in the nature of vexatious and oppressive foreign suits."[59] The existence of a venue selection [or arbitration] clause does not impose an absolute duty nor does it endow a party with an absolute right to have every dispute between the parties litigated in the named forum."[60] "[T]he applicability of the [clause] is an issue of fact [and law] in and of itself."[61] The Federal Rules of Civil Procedure require "a party to assert a defense of improper [jurisdiction or] venue by way of motion or responsive pleading."[62] "If [courts] were to permit a party to object . . . by filing suit for

---

[55] Boston Statement of Claim ¶¶ 15-19; North Carolina Complaint ¶¶ 11-16.

[56] Boston Statement of Claim ¶¶ 61-95; North Carolina Complaint ¶¶ 64-98.

[57] Complaint ¶¶ 44-47.

[58] *Id*.

[59] *Hospah Coal Co.*, 673 F.2d at 1163 (internal quotations omitted).

[60] *Id*.

[61] *Id*.

[62] *Id*.; FED. R. CIV. P. 12(b)(1), (3).

injunctive relief in a separate forum . . . rule 12(b) [would be rendered] a nullity."[63] "The fact that a venue selection [or arbitration] clause is involved does not negate the requirements of rule 12(b)."[64] "Were it otherwise, a party to such a contract would be invading the province of the courts to decide issues of [jurisdiction and] venue."[65]

"In a similar vein, [28 U.S.C. § 1404(a)] establishes a procedure whereby a party may request a change of venue."[66] "If [courts] were to allow a party who desires or asserts a right to litigate his suit in a court other than that where [a] suit is first filed . . . the procedures outlined in § 1404(a) [would be] little more than an exercise in futility."[67]

"[A] declaratory judgment [or injunctive relief] action cannot be used as a substitute for the rules of civil procedure in response to a pending lawsuit, nor can [those actions] be used as yet another weapon in a game of procedural warfare." Plaintiffs second claim and the remaining portions of their third claim are "weapons in a game of procedural warfare." These issues are more appropriately raised and resolved in the first-filed North Carolina Case.

However, a motion to dismiss for lack of personal jurisdiction is currently pending in the North Carolina Case.[68] The determination of that motion will inform whether the first-to-file rule will apply to Plaintiffs' second claim and the remaining portions of their third claim. Therefore, it is appropriate to stay determination on Defendants' Motion to Dismiss regarding these claims pending resolution of the motion to dismiss for lack of personal jurisdiction in the North Carolina Case.

---

[63] *Hospah Coal Co.*, 673 F.2d at 1163.

[64] *Id*.

[65] *Id*. at 1163-64.

[66] *Id*. at 1164.

[67] *Id*.

[68] Opposition at 14.

**ORDER**

IT IS HEREBY ORDERED that:

1) Defendants' Motion to Dismiss[69] is DENIED as to Plaintiffs' first claim and the portion of Plaintiffs' third claim seeking to enjoin Defendants from asserting any claims under the Foxcroft Agreement against the Individual Plaintiffs.[70]

2) Defendants' Motion to Dismiss[71] is GRANTED as to the portion of Plaintiffs' third claim seeking to enjoin Defendants from asserting claims under the Debt Exchange Agreement in any arbitration brought under the Foxcroft Agreement.[72]

3) Determination is STAYED on Defendants' Motion to Dismiss[73] as to Plaintiff's second claim and the remaining portions of Plaintiffs' third claim[74] pending resolution of the motion to dismiss for lack of personal jurisdiction filed in the North Carolina Case.

4) The parties are directed to jointly file a report stating the status of the North Carolina Case upon the issuance of a ruling on the motion to dismiss for lack of personal jurisdiction.

Signed January 24, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[69] Docket no. 14, filed Sept. 19, 2017.

[70] Complaint ¶¶ 10-20, 47.

[71] Docket no. 14, filed Sept. 19, 2017.

[72] Complaint ¶ 46.

[73] Docket no. 14, filed Sept. 19, 2017.

[74] Complaint ¶¶ 21-38, 44-47.