# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INCEPTION MINING, INC.; MICHAEL AHLIN; and TRENT D'AMBROSIO,<br><br>Plaintiffs,<br><br>v.<br><br>DANZIG, LTD.; ELLIOT FOXCROFT; and BRETT BERTOLAMI,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND STAYING IN PART MOTION FOR PRELIMINARY INJUNCTION, OR ALTERNATIVELY A PERMANENT INJUNCTION**<br><br>Case No. 2:17-cv-00944-DN<br><br>District Judge David Nuffer |

Plaintiffs assert claims for declaratory and injunctive relief relating to arbitration proceedings pending in Salt Lake City, Utah and Boston, Massachusetts (respectively, the "SLC Arbitration" and the "Boston Arbitration"; collectively, the "Arbitrations").[1] Plaintiffs move for preliminary or permanent injunctive relief staying the Arbitrations until threshold issues of arbitrability are resolved in this court.[2] Specifically, Plaintiffs seek a stay of the Arbitrations until the resolution of their claims that (1) Plaintiffs Michael Ahlin and Trent D'Ambrosio (the "Individual Plaintiffs") are not proper parties to the Arbitrations; and (2) Defendants' claims under certain contracts are not subject to arbitration in the Boston Arbitration.[3]

Defendants previously sought dismissal of Plaintiffs' Complaint on jurisdictional grounds.[4] A Memorandum Decision determined that jurisdiction and venue are proper for this

---

[1] Complaint, docket no. 4, filed Aug. 22, 2017.

[2] Plaintiffs' Motion for Preliminary Injunction, or Alternatively a Permanent Injunction ("Motion for Injunction"), docket no. 8, filed Sept. 13, 2017.

[3] *Id*. at 2.

[4] Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), docket no. 14, filed Sept. 19, 2017.

court to determine whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration.[5] The Memorandum Decision also stayed determination on Plaintiffs' claims concerning the Boston Arbitration pending resolution of a motion to dismiss in a related federal case in the Western District of North Carolina (the "North Carolina Case").[6]

Because Plaintiffs have established the right to a preliminary injunction on their claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration, Plaintiffs' Motion for Injunction[7] is GRANTED in part. However, for the same reasons identified in the Memorandum Decision on Defendants' Motion to Dismiss,[8] determination is STAYED on Plaintiffs' Motion for Injunction[9] as to Plaintiffs' claims concerning the Boston Arbitration.

## Contents

DISCUSSION ............................................................................................................. 3
    Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration ................. 3
        The Individual Plaintiffs did not agree to arbitrate in the SLC Arbitration ........... 5
        The Individual Plaintiffs are not bound by the Foxcroft Agreement's arbitration clause through agency or estoppel ........................................................... 6
    The Individual Plaintiffs will suffer irreparable injury if the SLC Arbitration is not stayed as to them ................................................................................................. 18
    The threatened injury to the Individual Plaintiffs if the SLC Arbitration is not stayed outweighs any injury to Defendants by a stay ...................................... 19
    Staying the SLC Arbitration as to the Individual Plaintiffs is not adverse to the public interest ........................................................................................................ 20
    No bond is required of Plaintiffs for the preliminary injunctive relief ............................. 21
    Determination on Plaintiffs' Motion for Injunction concerning the Boston Arbitration is stayed ............................................................................................................. 22
ORDER .................................................................................................................... 22

---

[5] Memorandum Decision and Order on Motion to Dismiss ("Memorandum Decision") at 6-9, docket no. 38, filed Jan. 24, 2018.

[6] *Id*. at 10-13.

[7] Docket no. 8, filed Sept. 13, 2017.

[8] Memorandum Decision at 10-13.

[9] Docket no. 8, filed Sept. 13, 2017.

## DISCUSSION

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[10] "To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[11] The standard for a permanent injunction is essentially the same, with the exception that the movant must show actual success rather than a likelihood of success on the merits of its claim.[12]

### Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[13] Therefore, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute[.]"[14] "But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value."[15]

The SLC Arbitration involves claims relating to a Consulting Agreement entered between Inception Mining, Inc. and Elliot Foxcroft on March 27, 2014 (the "Foxcroft Agreement").[16] In

---

[10] *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[11] *Id*. (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

[12] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

[13] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted).

[14] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[15] *Id*.

[16] Initial Statement of Claim, docket no. 8-5, filed Sept. 13, 2017; Foxcroft Agreement, docket no. 8-6, filed Sept. 13, 2017.

the SLC Arbitration, Mr. Foxcroft alleges claims against Inception Mining Inc., Michael Ahlin, and Trent D'Ambrosio for: federal securities fraud; Utah securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary duty; negligent misrepresentation; and breach of the implied covenant of good faith and fair dealing.[17]

Plaintiffs argue that the Individual Plaintiffs are not proper parties to the SLC Arbitration because they did not execute the Foxcroft Agreement in their individual capacity or agree to be bound by it, and because the Foxcroft Agreement expressly states that only disputes between Inception Mining, Inc. and Mr. Foxcroft are subject to its arbitration clause.[18] Defendants argue that while the Individual Plaintiffs are not signatories to the Foxcroft Agreement, they are nevertheless bound by its arbitration clause based on principles of agency and estoppel.[19]

"The question who may be bound to an arbitration provision is governed by state law relating to contracts in general."[20] The Foxcroft Agreement provides that it "shall be governed by and construed under the laws of the State of Utah without regard to principals *[sic]* of conflicts of laws provisions."[21] Therefore, Utah law governs whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration.

Under Utah law, "[i]n order to require a party to submit to arbitration, there must be an agreement to arbitrate."[22] "The minimum threshold for enforcement of an arbitration agreement

---

[17] Initial Statement of Claim ¶¶ 33-71.

[18] Motion for Injunction at 2, 16-17.

[19] Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Response") at 22-28, docket no. 19, filed Sept. 27, 2017. Defendants also argue that Plaintiffs failed to properly serve their Motion for Injunction, and that jurisdiction over Plaintiffs' claims concerning the SLC Arbitration is lacking or should be declined. *Id.* at 15-20. These arguments have already been addressed and rejected. Docket Text Order Denying [18] Motion to Strike, docket no. 37, filed Dec. 20, 2017; Memorandum Decision at 6-9, 11.

[20] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x 704, 708 (10th Cir. 2011) (citing *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 630-32 (2009)).

[21] Foxcroft Agreement at 2, ¶ 6.

[22] *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 987 (Utah 2006).

is direct and specific evidence of an agreement between the parties."[23] "Direct and specific evidence requires non-inferential evidence [and] an agreement between the *particular* parties regarding arbitration of future disputes."[24]

**The Individual Plaintiffs did not agree to arbitrate in the SLC Arbitration**

The Foxcroft Agreement contains the following arbitration clause:

In the event of any dispute between Company and Consultant arising under or pursuant to the terms of this Agreement, or any matters arising under the terms of this Agreement, the same shall be settled only by arbitration through American Arbitration Association located in Salt Lake City, Utah, in accordance with the Code of Arbitration Procedure published by the American Arbitration Association. The determination of the arbitrators shall be final and binding upon Company and Consultant and may be enforced in any court of appropriate jurisdiction.[25]

The Foxcroft Agreement identifies Inception Mining, Inc. as the "Company" and Elliot Foxcroft as the "Consultant."[26] No other entities or individuals are identified as parties to the contract. Michael Ahlin executed the Foxcroft Agreement, but on behalf of Inception Mining, Inc. as its "CEO," not in his individual capacity.[27] Trent D'Ambrosio did not execute the Foxcroft Agreement, and his name does not appear in the contract. The Foxcroft Agreement also contains no reference to rights or obligations of the Individual Plaintiffs under the contract, or benefits flowing from the contract to the Individual Plaintiffs in their individual capacity.

There is no direct and specific evidence on the face of the Foxcroft Agreement that the Individual Plaintiffs agreed to arbitration. Rather, under the plain language of the Foxcroft Agreement, only Inception Mining, Inc. and Mr. Foxcroft agreed to arbitrate their claims.

---

[23] *Id*. (internal quotations and punctuation omitted).

[24] *Id*. at 987-88 (emphasis in original).

[25] Foxcroft Agreement at 2, ¶ 6.

[26] *Id*. at 1.

[27] *Id*. at 3.

**The Individual Plaintiffs are not bound by the Foxcroft Agreement's arbitration clause through agency or estoppel**

"[N]o signature is required for a person to become party to a contract."[28] Utah law recognizes that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties."[29] "Traditionally, five theories for binding [or allowing enforcement by] a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."[30] "Sometimes a sixth theory, third-party beneficiary, is added, but it is closely analogous to the estoppel theory."[31]

Defendants argue that agency and estoppel bind the Individual Plaintiffs—who are nonsignatories—to the Foxcroft Agreement's arbitration clause.[32] But Defendants arguments, the selection of their cited authorities, and some of the authorities themselves overlook an important distinction between cases in which a nonsignatory seeks the benefit and protection of an arbitration clause and cases in which a signatory seeks to impose arbitration on a nonsignatory. When considering the five or six instances in which a nonsignatory may be benefitted or bound by an arbitration clause, the courts must remember the distinction between a nonsignatory seeking to enforce an arbitration clause and a signatory seeking to force a nonsignatory into arbitration.

---

[28] *Ellsworth*, 148 P.3d at 988.

[29] *Id*. at 989.

[30] *Id*. at 989 n.11 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000)).

[31] *Id*. (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356, 362 (5th Cir. 2003)). The third-party beneficiary status is often revealed by suit brought by the nonsignatory against the signatory, or actual receipt of benefits from the contract by the nonsignatory, both of which may lead to estoppel.

[32] Response at 22-28.

*Principles of agency do not bind the Individual Plaintiffs to the Foxcroft Agreement*

Defendants maintain that the Individual Plaintiffs were Inception Mining, Inc.'s agents and should be bound by the Foxcroft Agreement's arbitration clause.[33] The Individual Plaintiffs were directors, officers, and controlling shareholders of Inception Mining, Inc. at the time relevant to the Foxcroft Agreement. Thus, they were agents. But Defendants misread the law and therefore misconstrue the legal effect of the Individual Plaintiffs' status as Inception Mining, Inc's agents. Defendants identify no persuasive authority that an agent is *bound* by its principal's agreement to arbitrate. Defendants cite only authority holding that agents may *enforce* their principal's agreement to arbitrate.

Defendants correctly assert that the claims against the Individual Plaintiffs in the SLC Arbitration are closely intertwined with the claims against Inception Mining, Inc.[34] But Defendants rely on case law inapplicable to the posture of our case. The inapplicable case law holds, or states in dicta, that an agent who is a nonsignatory to its principal's arbitration agreement may *compel* arbitration of claims made against it by a signatory to the agreement.[35] In those instances, the nonsignatory compels the signatory to arbitrate.

Defendants' cases stand for the proposition that "[u]nder the theory of agency, an agent can assume the *protection* of the contract which the principal has signed [and c]ourts have applied this principle to allow for non-signatory agents to avail themselves of the *protection* of their principal's arbitration agreement."[36] This "prevent[s] . . . circumvention of valid arbitration

---

[33] *Id*. at 23.

[34] *Id*. at 24-25.

[35] *Id*. at 14-15, 23 (citing *Long v. Silver*, 248 F.3d 309, 319-21 (4th Cir. 2001); *Int'l Paper Co.*, 206 F.3d at 416-18; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988); *Ellison v. Alexander*, 700 S.E.2d 102, 110-12 (N.C. Ct. App. 2010)).

[36] *Ellison*, 700 S.E.2d at 110 (quoting *Brown v. Centex Homes*, 615 S.E.2d 86, 88 (N.C. Ct. App. 2005)) (emphasis added).

agreements by [signatories]. If [signatories] could sue individual [non-signatory] defendants [whose principal had signed and opted for protection of arbitration agreements], they could too easily avoid the arbitration agreements that they signed with corporate entities."[37]

The cases Defendants rely on are the inverse of our facts, where Elliot Foxcroft, a signatory to the Foxcroft Agreement, is seeking to compel the Individual Plaintiffs, nonsignatory agents of Inception Mining, Inc., to arbitrate. While a nonsignatory agent may compel a signatory to arbitrate, a signatory may not use the agency relationship to compel a nonsignatory agent to arbitrate.

Under the agency theory, "it matters whether the party resisting arbitration is a signatory or not."[38] This is because "the fact that the defendant corporations entered into [arbitration agreements does] not cause their agents . . . who acted only as officers on behalf of the corporations, to be personally bound by those agreements."[39] "[S]tatus as the CEO and CFO and agents of the defendant corporations is insufficient to personally bind [agents] to the [corporations'] arbitration agreements."[40] "[O]nly the [signatory] corporation and not its individual directors and officers [are] bound by an arbitration agreement, because the directors and officers [have] not personally agreed to arbitrate.[41]

Therefore, "an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract."[42] And "under traditional

---

[37] *Id.* (quoting *Collie v. Wehr Dissolution Corp.*, 345 F.Supp.2d 555, 562 (M.D. N.C. 2004)).

[38] *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 316 (5th Cir. 2011) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 131 (3d Cir. 1993)).

[39] *Id.* at 314.

[40] *Id.* at 317.

[41] *Id.* at 316 (citing *Bel-Ray Co.*, 181 F.3d at 446).

[42] *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999).

agency principles, the only other way . . . that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority."[43]

Defendants point to only a single case, *Lee v. Chica*,[44] in which a nonsignatory agent that *resisted* arbitration was bound by its principal's arbitration agreement. But *Lee* is distinguishable and unpersuasive.

In *Lee*, a customer opened a securities account with a corporation, and signed a customer agreement containing an arbitration clause.[45] After a dispute arose concerning the management of the account, the customer filed a demand for arbitration against the corporation and against the employee that was responsible for transactions in the customer's account.[46] The employee had not signed the customer agreement and did not appear or participate in the arbitration proceeding.[47] The arbitration panel awarded damages to the customer against both the corporation and the employee.[48] The award was confirmed by the district court.[49] The employee then appealed on grounds that he was not a proper party to the arbitration because he did not sign the customer agreement and state law would not enforce the terms of the contract against him.[50]

The Eighth Circuit Court of Appeals upheld the district court's confirmation of the arbitration award against the employee. The opinion confirmed its factual setting: "[T]he present

---

[43] *Id.*; *see also Ellsworth*, 148 P.3d at 989-90 (holding that a nonsignatory husband was not bound by an arbitration agreement entered by his wife in the absence of evidence that the wife had authority to act as an agent for the husband).

[44] 983 F.2d 883 (8th Cir. 1993).

[45] *Id.* at 884.

[46] *Id.* at 884-85.

[47] *Id.* at 885.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 885-86.

case is an action seeking to confirm an award already made by an arbitration panel in accordance with a provision in a contract. It is not an issue of validity, revocability or enforceability of the arbitration agreement within the contract."[51] Thus, the procedural posture and standard of review of *Lee* is distinguishable. In our case, the SLC Arbitration remains pending and Defendants seek to enforce the Foxcroft Agreement's arbitration clause against the nonsignatory Individual Plaintiffs.

Beyond the factual distinctions in *Lee,* the analysis in *Lee* is unpersuasive and distinguishable. The Eighth Circuit did state that "[f]ederal courts have found that an arbitration agreement between a customer and a brokerage firm can . . . be binding on the agent who represented or traded in the customer's account even if the agent had not signed the customer agreement."[52] But in each of the cases cited for this proposition, the nonsignatory agent sought to *compel* arbitration of claims made against it by a signatory.[53] And each case was in the securities setting.[54]

*Lee*'s reliance on these cases glosses over the distinction between situations in which a nonsignatory is *resisting*, rather than *seeking to enforce* arbitration. Nonsignatory agents may compel, but may not be compelled. They may adopt the protection contracted by their principal, but may not be forced to arbitrate against their will. Putting aside *Lee's* post-award setting, *Lee* supported its single sentence with cases inapplicable to *Lee*'s factual setting. Therefore, *Lee* is not persuasive authority.

---

[51] *Id*. at 886.

[52] *Id.*

[53] *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986); *Scher v. Bear Stearns & Co.*, 723 F.Supp. 211, 216 (S.D. N.Y. 1989); *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 451 (S.D. N.Y. 1985); *Nesslage v. York Secur., Inc.*, 823 F.2d 231, 233 (8th Cir. 1987).

[54] *Letizia*, 802 F.2d at 1188; *Scher*, 723 F.Supp. at 216; *Nesslage*, 823 F.2d at 233.

The Individual Plaintiffs' status as directors, officers, and controlling shareholders of Inception Mining, Inc. does not bind them to the contract's arbitration clause. While the claims against the Individual Plaintiffs in the SLC Arbitration may be intertwined with the claims against Inception Mining, Inc. this intertwining cannot compel the Individual Plaintiffs to arbitrate. This is because an intertwining claims analysis applies only when a *nonsignatory seeks to compel* a signatory to arbitrate, not when a *signatory seeks to compel* a nonsignatory to arbitrate. "[I]t matters whether the party resisting arbitration is a signatory or not."[55]

The Individual Plaintiffs did not sign the Foxcroft Agreement in their individual capacity and did not personally agree to arbitrate. And there is no suggestion that Inception Mining, Inc.—with actual, implied, or apparent authority—entered the Foxcroft Agreement on behalf of the Individual Plaintiffs. Therefore, the Individual Plaintiffs are not bound by the Foxcroft Agreement's arbitration clause through agency.

### Estoppel does not apply to the Individual Plaintiffs

Defendants also urge application of estoppel. The estoppel theory is at times referred to as "nonsignatory estoppel." However, use of this term can be problematic, as demonstrated by Defendants and some of their cited authorities' misreading of the law relating to the term. Nonsignatory estoppel is used to refer to situations where a nonsignatory is "estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions."[56] But the term is also used to refer to situations where a nonsignatory is invoking estoppel against a signatory that is resisting arbitration. The

---

[55] *DK Joint Venture 1*, 649 F.3d at 316 (quoting *Pritzker*, 7 F.3d at 131).

[56] *Ellsworth*, 148 P.3d at 989.

applicability of the estoppel theory depends on the situation, *i.e.*, whether the nonsignatory is suing or being sued and whether the nonsignatory is seeking to compel or resisting arbitration.

"The Utah Supreme Court has recognized three circumstances in which nonsignatory estoppel applies."[57] The first two circumstances involve "cases where estoppel [is] implemented *against a nonsignatory*[.]"[58] In the first, "the nonsignatory has sued a signatory on the contract [for a] benefit but [the nonsignatory seeks] to avoid the arbitration provision of the same contract."[59] In the second, "[a] nonsignatory will . . . be estopped when it receive[d] a 'direct benefit' from the contract which contains the arbitration clause."[60] "This variety of nonsignatory estoppel [is] employed only when the nonsignatory sues the signatory on the agreement after [the nonsignatory] receiv[ed] 'direct benefits' but [then] seeks to avoid arbitration."[61] In both these factual settings, the nonsignatory either seeks to benefit or has already obtained a benefit from the contract—and thus is estopped from avoiding the contractual arbitration clause.

The third "variety of nonsignatory estoppel [recognized in Utah] is that *enforced by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."[62] In this factual setting, the signatory is estopped from denying the clause applies. The nonsignatory makes himself the beneficiary of the arbitration clause, and seeks to enforce the clause against the signatory.

---

[57] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1294 (10th Cir. 2017).

[58] *Ellsworth*, 148 P.3d at 989 (emphasis in original).

[59] *Id*.

[60] *Id*.

[61] *Id*.

[62] *Id*. at 989 n.12 (emphasis in original).

None of the three fact settings in which forms of nonsignatory estoppel have been recognized in Utah apply to our case—where a *signatory plaintiff seeks to compel arbitration* of its claims against a *nonsignatory defendant*. The first two fact scenarios "do[] not apply to . . . a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract."[63] And the third estops a signatory when a nonsignatory defendant seeks to resist litigation, but the signatory plaintiff resists arbitration.[64]

The Individual Plaintiffs have not sued Defendants under the Foxcroft Agreement or asserted claims against Defendants in the SLC Arbitration. And they do not seek to compel Defendants to arbitrate in the SLC Arbitration. Rather, it is the signatory, Elliot Foxcroft, that has asserted claims in the SLC Arbitration under the Foxcroft Agreement against the nonsignatory Individual Plaintiffs, who are resisting that arbitration.

Defendants argue for the application of two additional forms of nonsignatory estoppel that Utah has not recognized. Defendants argue these doctrines should bind the Individual Plaintiffs to the Foxcroft Agreement's arbitration clause.[65] The first comes from Thomas H. Oehmke's treatise on commercial arbitration, which states:

> A nonsignatory (who is not otherwise subject to an arbitration agreement) will be compelled to arbitrate (i.e., equitably estopped from avoiding arbitration) when a signatory[:]
>
> - must rely on a written agreement to assert its claims against the nonsignatory[;]
>
> - asserts claims which are intimately founded in and intertwined with the underlying contract[;] or
>
> - alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent

---

[63] *Id*. at 989; *accord Solid Q Holdings, LLC v. Arenal Energy Corp.*, 362 P.3d 295, 298 (Utah Ct. App. 2015).

[64] *Ellsworth*, 148 P.3d at 989 n.12.

[65] Response at 13-14, 26-28.

> misconduct are founded in or intimately connected with the obligations of the underlying agreement[.][66]

The treatise relies on the Ninth Circuit Court of Appeals in *Murphy v. DirecTV, Inc*. But the treatise misstates the holding of *Murphy*.

The paraphrased quote the treatise takes from *Murphy* says nothing about *compelling* a nonsignatory to arbitrate. The scenarios identified in *Murphy* are about a nonsignatory seeking to *enforce* an arbitration clause:

> *Where a nonsignatory seeks to enforce an arbitration clause*, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.[67]

The estoppel described in *Murphy* is applied *against the signatory*, not the nonsignatory.

*Murphy* specifically notes that "[t]his rule reflects the policy that a [signatory] *plaintiff* may not, 'on one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the *defendant* is a non-signatory.'"[68] Therefore, the treatise misstates *Murphy*.

Clearly, *Murphy* and the cases it relies on—*Goldman v. KPMG, LLP*[69] and *Kramer v. Toyota Motor Corp.*[70]—do not stand for the proposition that a *signatory* may compel arbitration

---

[66] Thomas H. Oehmke, 1 Commercial Arbitration § 8.15 (Dec. 2017) (citing *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013)).

[67] *Murphy*, 724 F.3d at 1229 (quoting *Kramer*, 705 F.3d at 1128-29) (emphasis added).

[68] *Id*. (quoting *Goldman*, 173 Cal.App.4th at 220) (emphasis added).

[69] 173 Cal.App.4th 209 (2009).

[70] 705 F.3d 1122 (9th Cir. 2013).

of its claims against a *nonsignatory* if one of the enumerated circumstances exist. Rather, these cases stand for the inverse—that a *nonsignatory* may compel arbitration of claims brought against it by a *signatory*.[71] The treatise is not persuasive authority.

Most importantly, in *Solid Q Holdings, LLC v. Arenal Energy Corp.*,[72] the Utah Court of Appeals rejected the precise form of estoppel that Defendants are urging:

> [This form of estoppel] applies only to prevent a *signatory* from avoiding arbitration with a nonsignatory when the issues the *nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.* [B]ecause arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.[73]

Therefore, the first variant fact setting that Defendants argue should estop the Individual Plaintiffs and bind them to the Foxcroft Agreement's arbitration clause does not apply.

Defendants also argue a second line of precedent should apply to estop the Individual Plaintiffs from avoiding the SLC Arbitration. The Second Circuit Court of Appeals in *American Bureau of Shipping v. Tencara Shipyard S.P.A.* held that a *signatory plaintiff* may compel arbitration of its claims against a *nonsignatory defendant* when the nonsignatory defendant has received "direct benefits" from a contract containing an arbitration clause.[74] However, this authority is contrary to Utah law, not persuasive, and inapplicable to the facts of this case.

The form of nonsignatory estoppel recognized in *American Bureau of Shipping* is the inverse of the "direct benefits" form of nonsignatory estoppel recognized in Utah. In *Ellsworth v. American Arbitration Association*, the Utah Supreme Court recognized that a *signatory*

---

[71] *Murphy*, 724 F.3d at 1229; *Kramer*, 705 F.3d at 1128; *Goldman*, 173 Cal.App.4th at 217-18.

[72] 362 P.3d 295.

[73] *Id.* (quoting *Bridas S.A.P.I.C*, 345 F.3d at 361) (emphasis in original).

[74] 170 F.3d 349, 353 (2d Cir. 1999).

*defendant* may compel arbitration of claims brought against it by a *nonsignatory plaintiff* when the nonsignatory plaintiff has received direct benefits from the contract on which it is suing.[75] The Utah Supreme Court cited to *American Bureau of Shipping* when initially discussing the issue, but ultimately held that "direct benefits" nonsignatory estoppel is to be "employed only when the nonsignatory sues the signatory on the agreement after receiving 'direct benefits' but seeks to avoid arbitration."[76] It does not apply to "a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract."[77] Thus, *American Bureau of Shipping* is contrary to Utah law, even though it was cited in *Ellsworth*.

Additionally, the authority the Second Circuit relied on in *American Bureau of Shipping* does not support its holding. *American Bureau of Shipping* cites to *Thomson-CSF, S.A. v. American Arbitration Association*[78] for the proposition that a signatory plaintiff may compel arbitration of its claims against a nonsignatory defendant who received direct benefits from a contract. But *Thomson-CSF, S.A.* and the authority it relies on involve the inverse—where *nonsignatory plaintiffs* sue *signatory defendants*, and the signatory defendants seek to compel arbitration based on the direct benefits the *nonsignatory plaintiffs* received from contracts containing arbitration clauses.[79] *Thomson-CSF, S.A.* does not apply estoppel to a nonsignatory who does not make a claim under the agreement containing the arbitration clause. *American Bureau of Shipping* does not discuss or analyze the principles of nonsignatory estoppel or why

---

[75] 148 P.3d at 989

[76] *Id*.

[77] *Id*.

[78] 64 F.3d 773, 778-79 (2d Cir. 1995).

[79] *Id*. (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)).

the analysis of *Thomson-CSF, S.A.* applies to its differing fact setting. Thus, *American Bureau of Shipping* is not persuasive.

Even if a direct benefits analysis were applied in our case, Defendants have not identified any direct benefits the Individual Plaintiffs received from the Foxcroft Agreement. "Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'"[80] "The benefits must be direct—which is to say, flowing directly from the agreement."[81] Defendants baldly assert that that Foxcroft Agreement was part of a larger set of agreements and transaction which allowed the Individual Plaintiffs to be installed as directors and officers of Inception Mining, Inc.[82] And Defendants conclude that as shareholders, directors, and officers of Inception Mining, Inc., the Individual Plaintiffs directly received the benefits that Inception Mining, Inc. received from the Foxcroft Agreement.[83] These benefits do not flow directly from the Foxcroft Agreement to the Individual Plaintiffs. Rather, any benefits the Individual Plaintiffs received are indirect, *i.e.*, "where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."[84] Therefore, the second novel form of nonsignatory estoppel argued by Defendants to bind the Individual Plaintiffs to the Foxcroft Agreement's arbitration clause cannot apply on the facts in this record.

---

[80] *Bridas S.A.P.I.C*, 345 F.3d at 362 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 f.3d 187, 199 (3d Cir. 2001)); *accord Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017).

[81] *MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 61 (2d Cir. 2001).

[82] Response at 27.

[83] *Id*.

[84] *Ellsworth*, 148 P.3d at 989 (citing *MAG Portfolio Consult,* 268 F.3d at 61).

Because the Individual Plaintiffs are not parties to the Foxcroft Agreement and did not

agree to be bound by its arbitration clause, and because the Individual Plaintiffs cannot be bound

by the arbitration clause through agency or estoppel, Plaintiffs have shown a substantial

likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper

parties to the SLC Arbitration.

**The Individual Plaintiffs will suffer irreparable injury
if the SLC Arbitration is not stayed as to them**

"[P]urely speculative harm does not amount to irreparable injury[.]"[85] "An 'irreparable

harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will

experience harm that cannot be compensated after the fact by monetary damages.'"[86] Therefore,

"a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is

not speculative" and has met its burden to obtain a preliminary injunction.[87]

Courts of the District of Utah have found that "the injury to a party who is forced to

submit to arbitration when it did not agree to do so constitutes *per se* irreparable harm[.]"[88] The

rationale is that the party "will be required to participate in discovery and resolution of a case in

a forum lacking the substantive and procedural safeguards provided in our courts."[89] Moreover,

because "court[s] will set [an arbitrator's] decision aside only in very unusual

circumstances[,]"[90] forcing a party to submit to arbitration severely limits the scope of a court's

---

[85] *Greater Yellowstone Coal.*, 321 F.3d at 1258.

[86] *Id.* (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000)) (emphasis in original).

[87] *Id.*

[88] *Monavie, LLC v. Quixtar, Inc.*, 741 F.Supp.2d 1227, 1242 (D. Utah 2009); *accord UBS Bank USA v. Hussein*, 2014 WL 1600375, *4 (D. Utah Apr. 21, 2014); *Orchard Sec., LLC v. Pavel*, 2013 WL 4010228, *5 (D. Utah Aug. 6, 2013).

[89] *UBS Bank USA*, 2014 WL 1600375, *4; *Orchard Sec., LLC*, 2013 WL 4010228, *5.

[90] *First Options of Chicago, Inc.*, 514 U.S. at 942.

review of that party's claims and defenses. Therefore, "the time, energy, costs and fees associated with defending an unnecessary arbitration, as well as the potential cost of setting aside an unfavorable arbitration result, rise to the level of 'irreparable harm.'"[91]

This rationale is persuasive. Because Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration, they will suffer irreparable harm if the SLC Arbitration is not stayed pending a final determination as to whether they are proper parties to the SLC Arbitration.

**The threatened injury to the Individual Plaintiffs
if the SLC Arbitration is not stayed outweighs any injury to Defendants by a stay**

In analyzing whether the balance of hardships favors the moving party, a court must determine whether the identified irreparable harm outweighs the harm to the opposing party if a preliminary injunction is granted.[92] Therefore, the question is whether the irreparable harm of forcing the Individual Plaintiffs to submit to arbitration when they did not agree to do so outweighs the harm that a preliminary injunction staying the SLC Arbitration would have on Defendants.

Defendants do not identify any harm they would suffer if the SLC Arbitration is stayed until this action determines whether the Individual Plaintiffs are proper parties to the SLC Arbitration. Plaintiffs do not argue that the SLC Arbitration is improper as to Inception Mining, Inc., so a preliminary injunction staying the SLC Arbitration would be limited to only Elliot Foxcroft's claims against the Individual Plaintiffs. And the stay would simply preserve the status quo between Mr. Foxcroft and the Individual Plaintiffs as of the "last peaceable uncontested

---

[91] *Monavie, LLC*, 741 F.Supp.2d at 1241.

[92] *Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016).

status existing between the parties before the dispute developed[,]" *i.e.*, prior to Mr. Foxcroft's initiation of the SLC Arbitration.[93]

Defendants do argue that entering a *permanent* injunction regarding the SLC Arbitration will cause them harm by forcing them to litigate the same issues twice—once in the arbitration against Inception Mining, Inc. and once in court against the Individual Plaintiffs.[94] This inefficiency arises because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[95] "[T]he basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties."[96] Therefore, Defendants' argument is not compelling.

In balancing the equities, the irreparable harm of forcing the Individual Plaintiffs to submit to arbitration to which they did not agree outweighs any harm to Defendants caused by a preliminary stay of the SLC Arbitration.

**Staying the SLC Arbitration as to the Individual Plaintiffs
is not adverse to the public interest**

There is a "liberal federal policy favoring arbitration agreements."[97] However, it is equally important policy that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[98] "Forcing parties to

---

[93] *Schrier v. University of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotations omitted).

[94] Response at 29.

[95] *Howsam*, 537 U.S. at 83 (internal quotations omitted).

[96] *First Options of Chicago, Inc.*, 514 U.S. at 947 (internal quotations omitted).

[97] *Howsam*, 537 U.S. at 83 (internal quotations omitted).

[98] *Id*. (internal quotations omitted).

arbitrate when they did not agree to arbitrate would generate powerful disincentives to participate in arbitration and would lower the public's confidence in arbitration as an avenue for dispute resolution."[99]

A preliminary injunction staying the SLC Arbitration as to the Individual Plaintiffs serves the public interest. The stay minimizes the risk that the Individual Plaintiffs will suffer irreparable harm from arbitrating a dispute they did not agree to arbitrate. Therefore, a preliminary injunction is not adverse to the public interest.

### No bond is required of Plaintiffs for the preliminary injunctive relief

Under Rule 65(c) of the Federal Rules of Civil Procedure, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined[.]"[100]

Neither party has identified any specific costs or damages that may accrue to Defendants from the preliminary injunction. While Elliot Foxcroft's claims against the Individual Plaintiffs may be delayed by the injunctive relief, that delay is inherent in a battle fought on two fronts and does not result from the stay but from the contracts. The delay until resolution of the final decision on a permanent injunction should be minimal and not result in significant costs or damages. Therefore, no bond is required of Plaintiffs for the preliminary injunctive relief.

---

[99] *Orchard Sec., LLC*, 2013 WL 4010228, *5 (citing *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400, *6 (D. Md. Jan. 12, 2013); *Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*, 2011 Wl 3294682, *8 (D. Minn. Aug. 1, 2011))

[100] Fed. R. Civ. P. 65(c).

**Determination on Plaintiffs' Motion for Injunction
concerning the Boston Arbitration is stayed**

The remaining relief Plaintiffs seek with their Motion for Injunction concerns the Boston Arbitration.[101] In their Motion to Dismiss, Defendants argued that jurisdiction over Plaintiffs' claims concerning the Boston Arbitration should be declined in favor of the North Carolina Case because it was the first-filed federal case.[102] Determination on Defendants' Motion to Dismiss was stayed on this issue pending the resolution of a motion to dismiss for lack of personal jurisdiction filed in the North Carolina Case.[103] For the same reasons identified in the Memorandum Decision on Defendants' Motion to Dismiss,[104] it is appropriate to stay determination on Plaintiffs' Motion for Injunction[105] as to Plaintiffs' claims concerning the Boston Arbitration.

**ORDER**

IT IS HEREBY ORDERED that the Motion for Injunction is GRANTED IN PART and STAYED IN PART:

1)      Plaintiffs' Motion for Injunction[106] is GRANTED as to Plaintiffs' claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration.

2)      The SLC Arbitration is preliminarily enjoined as to the Individual Plaintiffs. Elliot Foxcroft's claims against the Individual Plaintiffs in the SLC Arbitration are stayed pending a final determination on Plaintiffs' claim that the Individual Plaintiffs are not proper parties to the

---

[101] Motion for Injunction at 2, 13-16.

[102] Motion to Dismiss at 3-4, 12-13.

[103] Memorandum Decision at 10-13.

[104] *Id*.

[105] Docket no. 8, filed Sept. 13, 2017.

[106] Docket no. 8, filed Sept. 13, 2017.

SLC Arbitration. This preliminary injunction does not affect the proceedings on Mr. Foxcroft's claims against Inception Mining, Inc. in the SLC Arbitration.

      3)      Defendants are directed to file a brief by no later than Monday, March 12, 2018, showing cause as to why the preliminary injunction should not be made permanent and declaratory judgment should not be granted in favor of Plaintiffs on their claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration.

      4)      Determination is STAYED on Plaintiffs' Motion for Injunction[107] as to Plaintiffs' claims concerning the Boston Arbitration pending resolution of the motion to dismiss for lack of personal jurisdiction filed in the North Carolina Case.

      5)      The parties are directed to jointly file a report stating the status of the North Carolina Case upon the issuance of a ruling on the motion to dismiss for lack of personal jurisdiction.

      Signed February 27, 2018.

BY THE COURT

_____

District Judge David Nuffer

---

[107] *Id.*