IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INCEPTION MINING, INC., a Nevada Corporation; MICHAEL AHLIN, an individual; and TRENT D'AMBROSIO, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>DANZIG, LTD., a North Carolina Corporation; ELLIOT FOXCROFT, an individual; and BRETT BERTOLAMI, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS**<br><br><br>Case No. 2:17-cv-00944-DN<br><br>District Judge David Nuffer |

Plaintiffs assert claims for declaratory judgment and injunctive relief relating to arbitration proceedings pending in Salt Lake City, Utah and Boston, Massachusetts (respectively, the "SLC Arbitration" and the "Boston Arbitration").[1] Defendants seek dismissal of Plaintiffs' Complaint arguing (1) subject matter jurisdiction is lacking or venue is improper based on the Federal Arbitration Act and the parties' binding agreements to arbitrate; and (2) jurisdiction should be declined in favor of a first-filed federal case pending in the Western District of North Carolina (the "North Carolina Case").[2]

A prior Memorandum Decision resolved Defendant's Motion to Dismiss as to Plaintiffs' claims concerning the SLC Arbitration.[3] However, the Motion to Dismiss was stayed as to

---

[1] Complaint, docket no. 4, filed Aug. 22, 2017.

[2] Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), docket no. 14, filed Sept. 19, 2017.

[3] Memorandum Decision and Order on Motion to Dismiss ("Memorandum Decision") at 6-10, 14 ¶¶ 1-2, docket no. 38, filed Jan. 24, 2018.

Plaintiffs' claims concerning the Boston Arbitration pending the resolution of a motion to dismiss filed in the North Carolina Case.[4] The parties were directed to file a joint status report upon the issuance of a ruling on the motion to dismiss in the North Carolina Case.[5]

On March 5, 2018, the parties filed a Joint Notice indicating that the motion to dismiss in the North Carolina Case was granted.[6] The Joint Notice also indicated that Defendants would not challenge that ruling.[7] Therefore, the stayed portions of Defendants' Motion to Dismiss are now ripe for determination.

Because the North Carolina Case was dismissed,[8] Defendants' Motion to Dismiss is MOOT as to whether jurisdiction over Plaintiffs' claims should be declined in favor of the North Carolina Case. Additionally, because subject matter jurisdiction exists and venue is proper for Plaintiffs' claims concerning Michael Ahlin and Trent D'Ambrosio (the "Individual Plaintiffs"), Defendants' Motion to Dismiss[9] is DENIED in part. But because issues of arbitrability are to be decided by the arbitrator in the Boston Arbitration, Defendants' Motion to Dismiss[10] is GRANTED in part.

---

[4] *Id*. 10-13, 14 ¶ 3.

[5] *Id*. at 14 ¶ 4.

[6] Joint Notice to the Court ("Joint Notice") at 2, docket no. 41, filed Mar. 5, 2018; *see also* Memorandum and Recommendation and Order ("North Carolina Order"), docket no. 41-1, filed Mar. 5, 2018.

[7] Joint Notice at 2.

[8] *Id*.; North Carolina Order.

[9] Docket no. 14, filed Sept. 19, 2017.

[10] *Id*.

**Contents**

BACKGROUND ........................................................................................................................ 3
    The Contracts ..................................................................................................................... 3
    The Boston Arbitration ...................................................................................................... 3
    Plaintiffs' Complaint .......................................................................................................... 4
DISCUSSION .......................................................................................................................... 5
    Subject matter jurisdiction exists and venue is proper for Plaintiffs' claims concerning the Individual Plaintiffs ........................................................................................................ 5
    The arbitrator determines issues of arbitrability concerning the signatories to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement .. 8
ORDER ................................................................................................................................... 11

# BACKGROUND[11]

## The Contracts

Plaintiffs' claims relate to three contracts:

- a consulting agreement entered between Gold American Mining Corp. and Danzig, Ltd. on February 25, 2013 (the "Danzig Agreement");[12]

- an asset purchase agreement entered between Inception Resources, LLC and Gold American Mining Corp., Inception Development, Inc., and Brett Bertolami on February 25, 2013 (the "Asset Purchase Agreement");[13] and

- a debt exchange agreement entered between Gold American Mining Corp. and Bret Bertolami on February 25, 2013 (the "Debt Exchange Agreement").[14]

## The Boston Arbitration

On June 12, 2017, Danzig, Ltd. initiated the Boston Arbitration with the American Arbitration Association ("AAA").[15] In the Boston Arbitration, Danzig, Ltd. alleges claims against Inception Mining, Inc. and the Individual Plaintiffs for federal securities fraud; North

---

[11] This Background section relates only to the previously stayed portions of Defendant's Motion to Dismiss. Memorandum Decision at 10-13, 14 ¶ 3; Motion to Dismiss at 2-3, 10-12.

[12] Docket no. 4-2, filed Aug. 22, 2017. Gold American Mining Corp. is now known as Inception Mining, Inc. Complaint ¶¶ 25, 27-28, 32a.

[13] Docket no. 4-3, filed Aug. 22, 2017.

[14] Docket no. 4-4, filed Aug. 22, 2017.

[15] Complaint ¶ 22.

Carolina securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary duty; and negligent misrepresentation.[16]

## Plaintiffs' Complaint

Plaintiffs initiated this case on August 22, 2017.[17] Plaintiffs' second and third causes of action (respectively "Second Claim" and "Third Claim") pertain to the Boston Arbitration, the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement.[18] In their Second Claim, Plaintiffs seeks declaratory judgment that:

- the Individual Plaintiffs are not proper parties to the Boston Arbitration;
- claims under the Asset Purchase Agreement and the Debt Exchange Agreement are not properly the subject of the Boston Arbitration;
- the exclusive dispute resolution forum under the Danzig Agreement is arbitration; and
- the exclusive dispute resolution forum for claims under the Asset Purchase Agreement is arbitration in Salt Lake City, Utah before an arbitrator with five years of experience in the gold mining industry.[19]

In their Third Claim, Plaintiffs seek, among other things, injunctive relief:

- enjoining Defendants Danzig, Ltd. and Brett Bertolami from asserting claims under the Asset Purchase Agreement in any court;
- enjoining Defendants Danzig, Ltd. and Brett Bertolami from asserting claims under the Danzig Agreement in any court;
- enjoining Defendants from asserting claims under the Debt Exchange Agreement in any arbitration brought under the Danzig Agreement or the Asset Purchase Agreement; and
- enjoining Defendants from asserting any claims under the Danzig Agreement, the Asset Purchase Agreement, or the Debt Exchange Agreement against the Individual Plaintiffs.[20]

---

[16] *Id*. ¶¶ 22-23, 29; Initial Statement of Claim ¶¶ 61-95, [docket no. 14-7](docket no. 14-7), filed Sept. 19, 2017.

[17] Complaint.

[18] *Id*. ¶¶ 21-47.

[19] *Id*. ¶ 37.

[20] *Id*. ¶¶ 44-47.

4

## DISCUSSION

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[21] "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute[.]"[22] "But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value."[23] And "[w]hen a plaintiff's claim is subject to arbitration, federal courts lack subject matter jurisdiction to entertain the action."[24]

### Subject matter jurisdiction exists and venue is proper for Plaintiffs' claims concerning the Individual Plaintiffs

Portions of Plaintiffs' Second Claim and Third Claim seek declaratory judgment and injunctive relief to determine whether the Individual Plaintiffs are proper parties to the Boston Arbitration, and whether Defendants may assert claims under the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement against the Individual Plaintiffs.[25] Defendants argue that subject matter jurisdiction over these claims is lacking or venue is improper because they raise issues of arbitrability that should be decided by the arbitrator in the Boston Arbitration.[26]

"[W]ho—court or arbitrator—has the primary authority to decide whether a party has agreed to arbitrate can make a critical difference to a party resisting arbitration."[27] This is

---

[21] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted).

[22] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[23] *Id*.

[24] *Adams v. Burlington N. R.R. Co.*, 838 F. Supp. 1461, 1464 (D. Kan. 1993) (citing *Atkins v. Louisville & Nashville R.R. Co.*, 819 F.2d 644, 650 (6th Cir. 1987)).

[25] Complaint ¶¶ 37a, 47.

[26] Motion to Dismiss at 2-3, 10-12; Defendants' Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint ("Reply") at 1-2, docket no. 29, filed Oct. 31, 2017.

[27] *First Options of Chicago, Inc.*, 514 U.S. at 942.

because when a party "ask[s] a court to review the arbitrator's decision . . . the court will set that decision aside only in very unusual circumstances."[28]

In answering "the 'who' question (*i.e.*, the standard-of-review question)[,]" the Supreme Court held that "[j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter."[29] "[W]hen parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'"[30]

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."[31] However, the Supreme Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so."[32] And Tenth Circuit precedent dictates that a "clear and unmistakable intent to arbitrate arbitrability . . . may be inferred from the parties' incorporation in their agreement of rules that make arbitrability subject to arbitration[.]"[33]

---

[28] *Id*.

[29] *Id*. (internal citations omitted, emphasis in original).

[30] *Belnap v. Lasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).

[31] *First Options of Chicago, Inc.*, 514 U.S. at 944.

[32] *Id.* (internal quotations and punctuation omitted).

[33] *Belnap*, 844 F.3d at 1290.

Plaintiffs' claims concerning the Individual Plaintiffs involve the Boston Arbitration and Defendants' claims under the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement.[34] Two of these contracts—the Danzig Agreement and the Asset Purchase Agreement—contain arbitration clauses.[35] However, none of these contracts identify the Individual Plaintiffs as parties to the contracts.

The Danzig Agreement identifies Gold American Mining Corp. and Danzig, Ltd. as parties.[36] The Individual Plaintiffs' names do not appear in the contract, and neither of them executed the Danzig Agreement in their corporate or individual capacity.

The Asset Purchase Agreement identifies as its parties: Inception Resources, LLC; Gold American Mining Corp.; Inception Development, Inc.; and Brett Bertolami.[37] The only reference in the contract to either of the Individual Plaintiffs is in its "Notices" section, which requires notices to Inception Resources, LLC to be addressed to the attention of Trent D'Ambrosio.[38] Similarly, Mr. D'Ambrosio's signature on the Asset Purchase Agreement is on behalf of Inception Resources, LLC as its manager, not in his individual capacity.[39]

The Debt Exchange Agreement identifies Gold American Mining Corp. and Brett Bertolami as parties.[40] The Individual Plaintiffs' names do not appear in the contract, and neither of them executed the contract in their corporate or individual capacity.

---

[34] Complaint ¶¶ 22-23, 29, 37a, 47; Initial Statement of Claim ¶¶ 61-95.

[35] Danzig Agreement § IX.F; Asset Purchase Agreement at art. 6, § 6.1.

[36] Danzig Agreement § I.

[37] Asset Purchase Agreement at 1.

[38] *Id*. at art. 6, § 6.4.

[39] *Id*. at 22.

[40] Debt Exchange Agreement at 1.

Additionally, none of the three contracts contain any reference to rights or obligations of the Individual Plaintiffs under the contracts, or to benefits flowing to the Individual Plaintiffs in their individual capacity. Given these facts, there is no evidence that the Individual Plaintiffs agreed to be bound by the Danzig Agreement, the Asset Purchase Agreement, or the Debt Exchange Agreement. Therefore, there is no clear and unmistakable evidence that the Individual Plaintiffs agreed to arbitrate issues of arbitrability.

Defendants argue the Individual Plaintiffs are nevertheless bound by the arbitration clauses in Danzig Agreement and the Asset Purchase Agreement based on theories of estoppel and agency.[41] But Defendants did not raise this argument until their Reply, and the argument goes to the substantive merit of Plaintiffs' claims. Therefore, the argument will not be addressed in this Memorandum Decision and Order.

In the absence of evidence that the Individual Plaintiffs' agreed to be bound by the Danzig Agreement, the Asset Purchase Agreement, or the Debt Exchange Agreement, or that the Individual Plaintiffs agreed to arbitrate issues of arbitrability, subject matter jurisdiction exists and venue is proper for Plaintiffs' claims concerning the Individual Plaintiffs.[42]

**The arbitrator determines issues of arbitrability concerning the signatories to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement**

As discussed, the Boston Arbitration involves claims relating to the Danzig Agreement, the Asset Purchase Agreement, and the Debt Exchange Agreement.[43] And two of these

---

[41] Reply at 2-6.

[42] Complaint ¶¶ 37a, 47.

[43] *Id*. ¶¶ 22-23, 29; Initial Statement of Claim ¶¶ 61-95.

contracts—the Danzig Agreement and the Asset Purchase Agreement—contain arbitration clauses.[44] The Danzig Agreement's arbitration clause states:

> All disputes in any manner relating to or arising out of this Agreement which the parties cannot resolve themselves shall be resolved first through mediation, and second through arbitration before a single experienced arbitrator, under the Commercial Rules of Arbitration of the [AAA]. The location of the arbitration shall be determined by Danzig. . . . Any arbitrator appointed under this Agreement shall have authority to order such equitable relief and such limited discovery as may be appropriate under the circumstances.[45]

The Asset Purchase Agreement's arbitration clause states:

> Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled exclusively by arbitration. Such arbitration shall be conducted before a single arbitrator with at least five (5) years experience in the gold mining industry and in accordance with the Commercial Arbitration Rules of the [AAA] then in effect. The arbitration shall take place in Salt Lake City, Utah. . . . The arbitrator may grant injunctive or other relief.[46]

Under AAA rules, decisions of arbitrability are conferred on the arbitrator: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."[47] Therefore, by specifying that arbitration shall be in accordance with AAA rules, the arbitration clauses in the Danzig Agreement and the Asset Purchase Agreement reflect a clear and unmistakable intent that the signatories to those contacts agreed to arbitrate issues of arbitrability.[48]

The remaining portions of Plaintiffs' Second Claim and Third Claim go directly to a determination of the scope of the arbitration clauses in the Danzig Agreement and the Asset

---

[44] Danzig Agreement § IX.F; Asset Purchase Agreement at art. 6, § 6.1.

[45] Danzig Agreement § IX.F.

[46] Asset Purchase Agreement art. 6, § 6.1.

[47] R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013); *Belnap*, 844 F.3d at 1283-84.

[48] *Belnap*, 844 F.3d at 1290.

Purchase Agreement, and to the arbitrability of claims in the Boston Arbitration.[49] These are issues of arbitrability. Therefore, because the signatories to the Danzig Agreement and the Asset Purchase Agreement agreed to arbitrate issues of arbitrability,[50] these issues are for the arbitrator in the Boston Arbitration to decide.

The fact that the Debt Exchange Agreement does not contain an arbitration clause does not mean that the arbitrator in the Boston Arbitration will not determine these arbitrability issues. The signatories to the Debt Exchange Agreement—Gold American Mining Corp. and Brett Bertolami[51]—are also signatories to the Asset Purchase Agreement,[52] wherein they agreed to arbitrate issues of arbitrability.[53] The recitals to the Debt Exchange Agreement also expressly state that the contract was entered under contemplation that Gold American Mining Corp. "intend[ed] to issue the new shares to [Brett] Bertolami simultaneously with the closing under [the] Asset Purchase Agreement[.]"[54] Whether Defendants' claims (relating to the Debt Exchange Agreement) are sufficiently aligned in fact and law to fall within the scope of the Asset Purchase Agreement's arbitration clause is an issue of arbitrability for the arbitrator in the Boston Arbitration to determine. Additionally, the fact that Danzig, Ltd. did not execute the Asset Purchase Agreement and the contract's arbitration clause states "arbitration shall take

---

[49] Complaint ¶¶ 37b-37d, 44-46.

[50] Danzig Agreement § IX.F; Asset Purchase Agreement at art. 6, § 6.1; R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013); *Belnap*, 844 F.3d at 1283-84.

[51] Debt Exchange Agreement at 2.

[52] Asset Purchase Agreement at 22.

[53] *Id*. at art. 6, § 6.1; R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013); *Belnap*, 844 F.3d at 1283-84.

[54] Debt Exchange Agreement at 1.

place in Salt Lake City, Utah"[55] does not alter that the arbitrator in the Boston Arbitration "ha[s] the power to rule on his or her own jurisdiction"[56] in the first instance.

Therefore, because the signatories to the Danzig Agreement and the Asset Purchase Agreement agreed to arbitrate issues of arbitrability,[57] subject matter jurisdiction is lacking[58] over the remaining portions of Plaintiffs' Second Claim and Third Claim.[59]

## ORDER

IT IS HEREBY ORDERED that:

1) Defendants' Motion to Dismiss[60] is MOOT as to whether jurisdiction over Plaintiffs' claims should be declined in favor of the North Carolina Case.

2) Defendants' Motion to Dismiss[61] is DENIED as to the portions of Plaintiffs' Second Claim and Third Claim concerning the Individual Plaintiffs.[62]

3) Defendants' Motion to Dismiss[63] is GRANTED as to the remaining portions of Plaintiffs' Second Claim and Third Claim.[64]

Signed April 23, 2017.

BY THE COURT

_____
District Judge David Nuffer

---

[55] Asset Purchase Agreement art. 6, § 6.1.

[56] R-7(a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013).

[57] *Id.*; Danzig Agreement § IX.F; Asset Purchase Agreement at art. 6, § 6.1; R-7(a); *Belnap*, 844 F.3d at 1283-84.

[58] *Belnap*, 844 F.3d at 1280; *Adams*, 838 F. Supp. at 1464.

[59] Complaint ¶¶ 37b-37d, 44-46.

[60] Docket no. 14, filed Sept. 19, 2017.

[61] Docket no. 14, filed Sept. 19, 2017.

[62] Complaint ¶¶ 37a, 47.

[63] Docket no. 14, filed Sept. 19, 2017.

[64] Complaint ¶¶ 37b-37d, 44-46.