## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INCEPTION MINING, INC.; MICHAEL AHLIN; and TRENT D'AMBROSIO,<br><br>Plaintiffs,<br><br>v.<br><br>DANZIG, LTD.; ELLIOT FOXCROFT; and BRETT BERTOLAMI,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION, OR ALTERNATIVELY A PERMANENT INJUNCTION**<br><br>Case No. 2:17-cv-00944-DN<br><br>District Judge David Nuffer |

Plaintiffs assert claims for declaratory judgment and injunctive relief relating to arbitration proceedings pending in Salt Lake City, Utah and Boston, Massachusetts (respectively, the "SLC Arbitration" and the "Boston Arbitration"; collectively, the "Arbitrations").[1] Plaintiffs move for preliminary or permanent injunctive relief staying the Arbitrations until threshold issues of arbitrability are resolved in this court.[2] Specifically, Plaintiffs seek a stay of the Arbitrations until the resolution of their claims that (1) Plaintiffs Michael Ahlin and Trent D'Ambrosio (the "Individual Plaintiffs") are not proper parties to the Arbitrations; and (2) Defendants' claims under certain contracts are not subject to arbitration in the Boston Arbitration.[3]

---

[1] Complaint, docket no. 4, filed Aug. 22, 2017.

[2] Plaintiffs' Motion for Preliminary Injunction, or Alternatively a Permanent Injunction ("Motion for Injunction"), docket no. 8, filed Sept. 13, 2017.

[3] *Id*. at 2.

Defendants sought dismissal of Plaintiffs' Complaint on jurisdictional grounds.[4] A Memorandum Decision determined that jurisdiction and venue are proper for this court to determine whether the Individual Plaintiffs may be required to arbitrate in the SLC Arbitration.[5] A Second Memorandum Decision determined the same regarding the Boston Arbitration.[6] However, the Second Memorandum Decision also determined that subject matter jurisdiction was lacking over Plaintiffs' claims that Defendants' claims under certain contracts are not subject to arbitration in the Boston Arbitration.[7]

A Third Memorandum Decision determined that entry of a preliminary injunction was appropriate on Plaintiffs' claim that the Individual Plaintiffs are not proper parties to the SLC Arbitration.[8] But the Third Memorandum Decision stayed determination on Plaintiffs' claims concerning the Boston Arbitration pending resolution of a motion to dismiss filed in a related federal case in the Western District of North Carolina (the "North Carolina Case").[9] The parties were directed to file a joint status report upon the issuance of a ruling on the motion to dismiss in the North Carolina Case.[10]

On March 5, 2018, the parties filed a Joint Notice indicating that the motion to dismiss in the North Carolina Case was granted.[11] The Joint Notice also indicated that Defendants would

---

[4] Defendants' Motion to Dismiss Plaintiffs' Complaint ("Motion to Dismiss"), docket no. 14, filed Sept. 19, 2017.

[5] Memorandum Decision and Order on Motion to Dismiss ("Memorandum Decision") at 6-9, docket no. 38, filed Jan. 24, 2018.

[6] Memorandum Decision and Order on Motion to Dismiss ("Second Memorandum Decision") at 5-8, docket no. 47, filed Apr. 23, 2018.

[7] *Id*. at 8-11.

[8] Memorandum Decision and Order Granting in Part and Staying in Part Motion for Preliminary Injunction, or Alternatively a Permanent Injunction ("Third Memorandum Decision") at 3-21, docket no. 39, filed Feb. 27, 2018.

[9] *Id*. at 22.

[10] *Id*. at 23 ¶ 5.

[11] Joint Notice to the Court ("Joint Notice") at 2, docket no. 41, filed Mar. 5, 2018; *see also* Memorandum and Recommendation and Order ("North Carolina Order"), docket no. 41-1, filed Mar. 5, 2018.

not challenge that ruling.[12] Therefore, the stayed portions of Plaintiffs' Motion for Injunction are now ripe for determination.

Plaintiffs' Motion for Injunction[13] is MOOT as to Plaintiffs' argument that Defendants' claims under certain contracts are not subject to arbitration in the Boston Arbitration.[14] However, because Plaintiffs have established the right to a preliminary injunction on their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration, Plaintiffs' Motion for Injunction[15] is GRANTED in part.

## Contents

DISCUSSION ........................................................................................................................... 4

    Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration ............. 4

        Utah law governs whether the Individual Plaintiffs may be required to arbitrate in the Boston Arbitration .................................................................................. 6

        The Individual Plaintiffs did not agree to arbitrate in the Boston Arbitration ........ 8

        The Individual Plaintiffs are not bound by the Danzig Agreement's arbitration clause through agency or estoppel ............................................................ 9

    The Individual Plaintiffs will suffer irreparable injury if the Boston Arbitration is not stayed as to them ................................................................................................ 21

    The threatened injury to the Individual Plaintiffs if the Boston Arbitration is not stayed outweighs any injury to Defendants by a stay ..................................................... 22

    Staying the Boston Arbitration as to the Individual Plaintiffs is not adverse to the public interest ............................................................................................................. 24

    No bond is required of Plaintiffs for the preliminary injunctive relief ........................... 24

ORDER .................................................................................................................................. 25

---

[12] Joint Notice at 2.

[13] Docket no. 8, filed Sept. 13, 2017.

[14] Second Memorandum Decision at 8-11.

[15] Docket no. 8, filed Sept. 13, 2017.

## DISCUSSION

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[16] "To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."[17] The standard for a permanent injunction is essentially the same, with the exception that the movant must show actual success rather than a likelihood of success on the merits of its claim.[18]

### Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[19] Therefore, "a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute[.]"[20] "But, where the party has agreed to arbitrate, he or she, in effect, has relinquished much of that right's practical value."[21]

---

[16] *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[17] *Id.* (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

[18] *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

[19] *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotations omitted).

[20] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[21] *Id.*

The Boston Arbitration involves claims relating to three contracts:[22]

- a consulting agreement entered between Gold American Mining Corp. and Danzig, Ltd. on February 25, 2013 (the "Danzig Agreement");[23]

- an asset purchase agreement entered between Inception Resources, LLC and Gold American Mining Corp., Inception Development, Inc., and Brett Bertolami on February 25, 2013 (the "Asset Purchase Agreement");[24] and

- a debt exchange agreement entered between Gold American Mining Corp. and Bret Bertolami on February 25, 2013 (the "Debt Exchange Agreement").[25]

In the Boston Arbitration, Danzig, Ltd. alleges claims against Inception Mining Inc. and the Individual Plaintiffs for federal securities fraud; North Carolina securities fraud; breach of contract; unjust enrichment; common law fraud; breach of fiduciary duty; and negligent misrepresentation.[26]

Plaintiffs argue that the Individual Plaintiffs are not proper parties to the Boston Arbitration because they did not execute the Danzig Agreement in a corporate or individual capacity and did not agree to be bound by the contract's arbitration clause.[27] Defendants acknowledge that the Individual Plaintiffs are not signatories to the Danzig Agreement, but argue that the Individual Plaintiffs are nevertheless bound by the arbitration clause based on common law principles of agency and estoppel.[28]

---

[22] Complaint ¶¶ 22-23, 29; Initial Statement of Claim ¶¶ 61-95, docket no. 8-1, filed Sept. 13, 2017.

[23] Docket no. 8-2, filed Sept. 13, 2017. Gold American Mining Corp. is now known as Inception Mining, Inc. Complaint ¶¶ 25, 27-28, 32a.

[24] Docket no. 8-3, filed Aug. 22, 2017.

[25] Docket no. 8-4, filed Aug. 22, 2017.

[26] Complaint ¶¶ 22-23, 29; Initial Statement of Claim ¶¶ 61-95.

[27] Motion for Injunction at 2, 13-14.

[28] Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Response") at 22-28, docket no. 19, filed Sept. 27, 2017. Defendants also argue that Plaintiffs failed to properly serve their Motion for Injunction, and that jurisdiction over Plaintiffs' claims is lacking or should be declined. *Id.* at 15-20. These arguments have already been addressed and rejected. Docket Text Order Denying [18] Motion to Strike, docket no. 37, filed Dec. 20, 2017; Second Memorandum Decision at 2, 5-8.

**Utah law governs whether the Individual Plaintiffs may be required to arbitrate in the Boston Arbitration**

"The question who may be bound to an arbitration provision is governed by state law relating to contracts in general."[29] The Danzig Agreement is silent as to which state's laws govern the contract. Therefore, the choice of law provisions of the forum state—Utah—must be applied to resolve the choice law question.[30]

In Utah, "courts apply the 'most significant relationship' analysis to determine the choice of law in a contract cause of action."[31] Factors considered in applying this test include:

> (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.[32]

The Danzig Agreement is a consulting agreement wherein Gold American Mining Corp. engaged and retained Danzig, Ltd. as a business consultant for a term of six months.[33] Gold American Mining Corp. was a Nevada corporation and its operations were in Utah during the term of the Danzig Agreement.[34] Danzig, Ltd. is a North Carolina corporation with its principal place of business in Iredell County, North Carolina.[35] Gold American Mining Corp. was never registered, headquartered, or actively engaged in business in North Carolina.[36]

---

[29] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed. App'x 704, 708 (10th Cir. 2011) (citing *Arthur Andersen, LLP v. Carlisle*, 556 U.S. 624, 630-32 (2009)).

[30] *Rocky Mountain Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, 24 F.3d 125, 128 (10th Cir. 1994) ("In making choice of law determinations, a federal court sitting in diversity must apply the choice of law provisions of the forum state in which it is sitting.").

[31] *Id*. at 129.

[32] *Id*. (citing Restatement (Second) of Conflict of Laws § 188).

[33] Danzig Agreement §§ I, VIII.A.

[34] Complaint ¶ 26; North Carolina Order at 2; Asset Purchase Agreement at 1.

[35] Complaint ¶ 4; Initial Statement of Claim ¶ 15; North Carolina Order at 2.

[36] North Carolina Order at 2, 6.

The negotiations for the Danzig Agreement, and the two related simultaneously-entered contracts,[37] occurred over telephone and email.[38] These negotiations were primarily between Elliott Foxcroft on behalf of Brett Bertolami, and the Individual Plaintiffs.[39] Elliott Foxcroft is the principal of Danzig, Ltd. and is a North Carolina resident.[40] Mr. Foxcroft executed the Danzig Agreement on behalf of Danzig, Ltd.[41] Brett Bertolami was the president and majority shareholder of Gold American Mining Corp., and is a North Carolina resident.[42] Mr. Bertolami does business in Utah and with Utah companies,[43] and executed the Danzig Agreement on behalf of Gold American Mining Corp.[44] The Individual Plaintiffs are residents of Utah, and have no contacts with North Carolina other than their telephone and email communications during the contract negotiations.[45]

Based on these facts, either Utah or North Carolina is the state having the most significant relationship to the Danzig Agreement. Plaintiffs argue that Utah law applies.[46] Defendants do not respond to this argument, effectively conceding the issue. Given this concession, and considering the above-listed factors, including that Danzig, Ltd.'s consulting services were for a term during which Gold American Mining Corp.'s operations were in Utah,[47]

---

[37] Asset Purchase Agreement; Debt Exchange Agreement.

[38] North Carolina Order at 2.

[39] *Id*.

[40] *Id*.; Complaint ¶ 5; Initial Statement of Claim ¶ 16.

[41] Danzig Agreement at 8.

[42] North Carolina Order at 2; Complaint ¶ 6; Asset Purchase Agreement at 1.

[43] Complaint ¶ 6.

[44] Danzig Agreement at 8.

[45] Complaint ¶ 3; Initial Statement of Claim ¶¶ 18-19; North Carolina Order at 2.

[46] Motion for Injunction at 10.

[47] Complaint ¶ 26.

Utah has the most significant relationship to the Danzig Agreement. Therefore, Utah law governs whether the Individual Plaintiffs may be required to arbitrate in the Boston Arbitration.

Under Utah law, "[i]n order to require a party to submit to arbitration, there must be an agreement to arbitrate."[48] "The minimum threshold for enforcement of an arbitration agreement is direct and specific evidence of an agreement between the parties."[49] "Direct and specific evidence requires non-inferential evidence [and] an agreement between the *particular* parties regarding arbitration of future disputes."[50]

**The Individual Plaintiffs did not agree to arbitrate in the Boston Arbitration**

The Danzig Agreement contains the following arbitration clause:

> All disputes in any manner relating to or arising out of this Agreement which the parties cannot resolve themselves shall be resolved first through mediation, and second through arbitration before a single experienced arbitrator, under the Commercial rules of Arbitration of the American Arbitration Association. The location of the arbitration shall be determined by Danzig[, Ltd.]. The decision or award of any arbitrator shall be binding upon the parties and shall be enforceable in a court having jurisdiction over the party against whom enforcement is sought. . . . Any arbitrator appointed under this Agreement shall have authority to order such equitable relief and such limited discovery as may be appropriate under the circumstances.[51]

The Danzig Agreement identifies Gold American Mining Corp. and Danzig, Ltd. as parties.[52] No other entities or individuals are identified as parties to the contract. The Individual Plaintiffs' names do not appear in the contract, and neither of them executed the contract in their corporate or individual capacity. The Danzig Agreement also contains no reference to rights or

---

[48] *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 987 (Utah 2006).

[49] *Id*. (internal quotations and punctuation omitted).

[50] *Id*. at 987-88 (emphasis in original).

[51] Danzig Agreement § IX.F.

[52] *Id*. § I.

obligations of the Individual Plaintiffs under the contract, or benefits flowing from the contract to the Individual Plaintiffs in their individual capacity.

There is no direct and specific evidence on the face of the Danzig Agreement that the Individual Plaintiffs agreed to arbitration. Rather, under the plain language of the Danzig Agreement, only Gold American Mining Corp. and Danzig, Ltd. agreed to arbitrate their claims.

**The Individual Plaintiffs are not bound by the Danzig Agreement's arbitration clause through agency or estoppel**

"[N]o signature is required for a person to become party to a contract."[53] Utah law recognizes that "under certain circumstances, a nonsignatory to an arbitration agreement can enforce or be bound by an agreement between other parties."[54] "Traditionally, five theories for binding [or allowing enforcement by] a nonsignatory to an arbitration agreement have been recognized: (1) incorporation by references; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel."[55] "Sometimes a sixth theory, third-party beneficiary, is added, but it is closely analogous to the estoppel theory."[56]

Defendants argue that agency and estoppel bind the Individual Plaintiffs—who are nonsignatories—to the Danzig Agreement's arbitration clause.[57] But Defendants arguments, the selection of their cited authorities, and some of the authorities themselves overlook an important distinction between cases in which a nonsignatory seeks the benefit and protection of an arbitration clause and cases in which a signatory seeks to impose arbitration on a nonsignatory.

---

[53] *Ellsworth*, 148 P.3d at 988.

[54] *Id*. at 989.

[55] *Id*. at 989 n.11 (citing *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000)).

[56] *Id*. (citing *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356, 362 (5th Cir. 2003)). The third-party beneficiary status is often revealed by suit brought by the nonsignatory against the signatory, or actual receipt of benefits from the contract by the nonsignatory, both of which may lead to estoppel.

[57] Response at 22-28.

When considering the five or six instances in which a nonsignatory may be benefitted or bound by an arbitration clause, courts must remember the distinction between a nonsignatory seeking to enforce an arbitration clause and a signatory seeking to force a nonsignatory into arbitration.

### *Principles of agency do not bind the Individual Plaintiffs to the Danzig Agreement*

Defendants assert that "around the time that the parties entered into the Danzig Agreement, the Individual Plaintiffs were significant controlling players in the actions of [Gold American Mining Corp.]"[58] Defendants maintain that because of this, the Individual Plaintiffs were Gold American Mining Corp.'s agents and should be bound by the Danzig Agreement's arbitration clause.[59] Defendants misread the law and therefore misconstrue the legal effect of the Individual Plaintiffs' status as the company's agents. Defendants identify no persuasive authority that an agent is *bound* by its principal's agreement to arbitrate. Defendants cite only authority holding that agents may *enforce* their principal's agreement to arbitrate.

Defendants correctly assert that the claims against the Individual Plaintiffs in the Boston Arbitration are closely intertwined with the claims against Inception Mining, Inc.[60] But Defendants rely on case law inapplicable to the posture of our case. The inapplicable case law holds, or states in dicta, that an agent who is a nonsignatory to its principal's arbitration agreement may *compel* arbitration of claims made against it by a signatory to the agreement.[61] In those instances, the nonsignatory compels the signatory to arbitrate.

---

[58] *Id*. at 23.

[59] *Id*.

[60] *Id*. at 24-25.

[61] *Id*. at 14-15, 23 (citing *Long v. Silver*, 248 F.3d 309, 319-21 (4th Cir. 2001); *Int'l Paper Co.*, 206 F.3d at 416-18; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988); *Ellison v. Alexander*, 700 S.E.2d 102, 110-12 (N.C. Ct. App. 2010)).

Defendants' cases stand for the proposition that "[u]nder the theory of agency, an agent can assume the *protection* of the contract which the principal has signed [and c]ourts have applied this principle to allow for non-signatory agents to avail themselves of the *protection* of their principal's arbitration agreement."[62] This "prevent[s] . . . circumvention of valid arbitration agreements by [signatories]. If [signatories] could sue individual [non-signatory] defendants [whose principal had signed and opted for protection of arbitration agreements], they could too easily avoid the arbitration agreements that they signed with corporate entities."[63]

The cases Defendants rely on are the inverse of our facts, where Danzig, Ltd., a signatory to the Danzig Agreement, is seeking to compel the Individual Plaintiffs, nonsignatory agents of Gold American Mining Corp., to arbitrate. While a nonsignatory agent may compel a signatory to arbitrate, a signatory may not use the agency relationship to compel a nonsignatory agent to arbitrate.

Under the agency theory, "it matters whether the party resisting arbitration is a signatory or not."[64] This is because "the fact that the defendant corporations entered into [arbitration agreements does] not cause their agents . . . who acted only as officers on behalf of the corporations, to be personally bound by those agreements."[65] "[S]tatus as the CEO and CFO and agents of the defendant corporations is insufficient to personally bind [agents] to the [corporations'] arbitration agreements."[66] "[O]nly the [signatory] corporation and not its

---

[62] *Ellison*, 700 S.E.2d at 110 (quoting *Brown v. Centex Homes*, 615 S.E.2d 86, 88 (N.C. Ct. App. 2005)) (emphasis added).

[63] *Id*. (quoting *Collie v. Wehr Dissolution Corp.*, 345 F.Supp.2d 555, 562 (M.D. N.C. 2004)).

[64] *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 316 (5th Cir. 2011) (quoting *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 131 (3d Cir. 1993)).

[65] *Id*. at 314.

[66] *Id*. at 317.

individual directors[,] officers [and agents are] bound by an arbitration agreement, because the directors[,] officers [and agents have] not personally agreed to arbitrate.[67]

Therefore, "an agent of a disclosed principal, even one who negotiates and signs a contract for her principal, does not become a party to the contract."[68] And "under traditional agency principles, the only other way . . . that an agent can be bound by the terms of a contract is if she is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority."[69]

Defendants point to only a single case, *Lee v. Chica*,[70] in which a nonsignatory agent that *resisted* arbitration was bound by its principal's arbitration agreement. But *Lee* is distinguishable and unpersuasive.

In *Lee*, a customer opened a securities account with a corporation, and signed a customer agreement containing an arbitration clause.[71] After a dispute arose concerning the management of the account, the customer filed a demand for arbitration against the corporation and against the employee that was responsible for transactions in the customer's account.[72] The employee had not signed the customer agreement and did not appear or participate in the arbitration proceeding.[73] The arbitration panel awarded damages to the customer against both the

---

[67] *Id*. at 316 (citing *Bel-Ray Co.*, 181 F.3d at 446).

[68] *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445 (3d Cir. 1999).

[69] *Id.*; *see also Ellsworth*, 148 P.3d at 989-90 (holding that a nonsignatory husband was not bound by an arbitration agreement entered by his wife in the absence of evidence that the wife had authority to act as an agent for the husband).

[70] 983 F.2d 883 (8th Cir. 1993).

[71] *Id*. at 884.

[72] *Id*. at 884-85.

[73] *Id*. at 885.

corporation and the employee.[74] The award was confirmed by the district court.[75] The employee then appealed on grounds that he was not a proper party to the arbitration because he did not sign the customer agreement and state law would not enforce the terms of the contract against him.[76]

The Eighth Circuit Court of Appeals upheld the district court's confirmation of the arbitration award against the employee. The opinion confirmed its factual setting: "[T]he present case is an action seeking to confirm an award already made by an arbitration panel in accordance with a provision in a contract. It is not an issue of validity, revocability or enforceability of the arbitration agreement within the contract."[77] Thus, the procedural posture and standard of review of *Lee* is distinguishable. In our case, the Boston Arbitration remains pending and Defendants seek to enforce the Danzig Agreement's arbitration clause against the nonsignatory Individual Plaintiffs.

Beyond the factual distinctions in *Lee,* the analysis in *Lee* is unpersuasive and distinguishable. The Eighth Circuit did state that "[f]ederal courts have found that an arbitration agreement between a customer and a brokerage firm can . . . be binding on the agent who represented or traded in the customer's account even if the agent had not signed the customer agreement."[78] But in each of the cases cited for this proposition, the nonsignatory agent sought to

---

[74] *Id*.

[75] *Id*.

[76] *Id*. at 885-86.

[77] *Id*. at 886.

[78] *Id*.

*compel* arbitration of claims made against it by a signatory.[79] And each case was in the securities setting.[80]

Lee's reliance on these cases glosses over the distinction between situations in which a nonsignatory is *resisting*, rather than *seeking to enforce* arbitration. Nonsignatory agents may compel, but may not be compelled. They may adopt the protection contracted by their principal, but may not be forced to arbitrate against their will. Putting aside *Lee's* post-award setting, *Lee* supported its single sentence with cases inapplicable to *Lee's* factual setting. Therefore, *Lee* is not persuasive authority.

The Individual Plaintiffs' status as "significant controlling players" or agents of Gold American Mining Corp. does not bind them to the Danzig Agreement's arbitration clause. While the claims against the Individual Plaintiffs in the Boston Arbitration may be intertwined with Danzig, Ltd.'s claims against Inception Mining, Inc., this intertwining cannot compel the Individual Plaintiffs to arbitrate. This is because an intertwining claims analysis applies only when a *nonsignatory seeks to compel* a signatory to arbitrate, not when a *signatory seeks to compel* a nonsignatory to arbitrate. "[I]t matters whether the party resisting arbitration is a signatory or not."[81]

The Individual Plaintiffs did not sign the Danzig Agreement in their individual capacity and did not personally agree to arbitrate. And there is no suggestion that Gold American Mining Corp.—with actual, implied, or apparent authority—entered the Danzig Agreement on behalf of

---

[79] *Letizia v. Prudential Bache Secur., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986); *Scher v. Bear Stearns & Co.*, 723 F.Supp. 211, 216 (S.D. N.Y. 1989); *Brener v. Becker Paribas, Inc.*, 628 F.Supp. 442, 451 (S.D. N.Y. 1985); *Nesslage v. York Secur., Inc.*, 823 F.2d 231, 233 (8th Cir. 1987).

[80] *Letizia*, 802 F.2d at 1188; *Scher*, 723 F.Supp. at 216; *Nesslage*, 823 F.2d at 233.

[81] *DK Joint Venture 1*, 649 F.3d at 316 (quoting *Pritzker*, 7 F.3d at 131).

the Individual Plaintiffs. Therefore, the Individual Plaintiffs are not bound by the Danzig Agreement's arbitration clause through agency.

### Estoppel does not apply to the Individual Plaintiffs

Defendants also urge application of estoppel. The estoppel theory is at times referred to as "nonsignatory estoppel." However, use of this term can be problematic, as demonstrated by Defendants and some of their cited authorities' misreading of the law relating to the term. Nonsignatory estoppel is used to refer to situations where a nonsignatory is "estopped from avoiding arbitration when the nonsignatory seeks to benefit from some portions of the contract but avoid the arbitration provisions."[82] But the term is also used to refer to situations where a nonsignatory is invoking estoppel against a signatory that is resisting arbitration. The applicability of the estoppel theory depends on the situation, *i.e.*, whether the nonsignatory is suing or being sued and whether the nonsignatory is seeking to compel or resisting arbitration.

"The Utah Supreme Court has recognized three circumstances in which nonsignatory estoppel applies."[83] The first two circumstances involve "cases where estoppel [is] implemented *against a nonsignatory*[.]"[84] In the first, "the nonsignatory has sued a signatory on the contract [for a] benefit but [the nonsignatory seeks] to avoid the arbitration provision of the same contract."[85] In the second, "[a] nonsignatory will . . . be estopped when it receive[d] a 'direct benefit' from the contract which contains the arbitration clause."[86] "This variety of nonsignatory estoppel [is] employed only when the nonsignatory sues the signatory on the agreement after [the

---

[82] *Ellsworth*, 148 P.3d at 989.

[83] *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1294 (10th Cir. 2017).

[84] *Ellsworth*, 148 P.3d at 989 (emphasis in original).

[85] *Id*.

[86] *Id*.

nonsignatory] receiv[ed] 'direct benefits' but [then] seeks to avoid arbitration."[87] In both these factual settings, the nonsignatory either seeks to benefit or has already obtained a benefit from the contract—and thus is estopped from avoiding the contractual arbitration clause.

The third "variety of nonsignatory estoppel [recognized in Utah] is that *enforced by a nonsignatory* when the signatory plaintiff sues a nonsignatory defendant on the contract but seeks to avoid the contract-mandated arbitration by relying on the fact that the defendant is a nonsignatory."[88] In this factual setting, the signatory is estopped from denying the clause applies. The nonsignatory makes himself the beneficiary of the arbitration clause, and seeks to enforce the clause against the signatory.

None of the three fact settings in which forms of nonsignatory estoppel have been recognized in Utah apply to our case—where a *signatory plaintiff seeks to compel arbitration* of its claims against a *nonsignatory defendant*. The first two fact scenarios "do[] not apply to . . . a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract."[89] And the third estops a signatory when a nonsignatory defendant seeks to resist litigation, but the signatory plaintiff resists arbitration.[90]

The Individual Plaintiffs have not sued Defendants under the Danzig Agreement or asserted claims against Defendants in the Boston Arbitration. And they do not seek to compel Defendants to arbitrate in the Boston Arbitration. Rather, it is the signatory—Danzig, Ltd.—that has asserted claims in the Boston Arbitration under the Danzig Agreement against the nonsignatory Individual Plaintiffs, who are resisting that arbitration.

---

[87] *Id*.

[88] *Id*. at 989 n.12 (emphasis in original).

[89] *Id*. at 989; *accord Solid Q Holdings, LLC v. Arenal Energy Corp.*, 362 P.3d 295, 298 (Utah Ct. App. 2015).

[90] *Ellsworth*, 148 P.3d at 989 n.12.

Defendants argue for the application of two additional forms of nonsignatory estoppel that Utah has not recognized. Defendants argue these doctrines should bind the Individual Plaintiffs to the Danzig Agreement's arbitration clause.[91] The first comes from Thomas H. Oehmke's treatise on commercial arbitration, which states:

> A nonsignatory (who is not otherwise subject to an arbitration agreement) will be compelled to arbitrate (i.e., equitably estopped from avoiding arbitration) when a signatory[:]
>
> - must rely on a written agreement to assert its claims against the nonsignatory[;]
>
> - asserts claims which are intimately founded in and intertwined with the underlying contract[;] or
>
> - alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement[.][92]

The treatise relies on the Ninth Circuit Court of Appeals in *Murphy v. DirecTV, Inc*. But the treatise misstates the holding of *Murphy*.

The paraphrased quote the treatise takes from *Murphy* says nothing about *compelling* a nonsignatory to arbitrate. The scenarios identified in *Murphy* are about a nonsignatory seeking to *enforce* an arbitration clause:

> *Where a nonsignatory seeks to enforce an arbitration clause*, the doctrine of equitable estoppel applies in two circumstances: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.[93]

The estoppel described in *Murphy* is applied *against the signatory*, not the nonsignatory.

---

[91] Response at 13-14, 26-28.

[92] Thomas H. Oehmke, 1 Commercial Arbitration § 8.15 (Dec. 2017) (citing *Murphy v. DirecTV, Inc.*, 724 F.3d 1218 (9th Cir. 2013)).

[93] *Murphy*, 724 F.3d at 1229 (quoting *Kramer*, 705 F.3d at 1128-29) (emphasis added).

*Murphy* specifically notes that "[t]his rule reflects the policy that a [signatory] *plaintiff* may not, 'on one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the *defendant* is a non-signatory.'"[94] Therefore, the treatise misstates *Murphy*.

Clearly, *Murphy* and the cases it relies on—*Goldman v. KPMG, LLP*[95] and *Kramer v. Toyota Motor Corp.*[96]—do not stand for the proposition that a *signatory* may compel arbitration of its claims against a *nonsignatory* if one of the enumerated circumstances exist. Rather, these cases stand for the inverse—that a *nonsignatory* may compel arbitration of claims brought against it by a *signatory*.[97] The treatise is not persuasive authority.

Most importantly, in *Solid Q Holdings, LLC v. Arenal Energy Corp.*,[98] the Utah Court of Appeals rejected the precise form of estoppel that Defendants are urging:

> [This form of estoppel] applies only to prevent a *signatory* from avoiding arbitration with a nonsignatory when the issues the *nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed*. [B]ecause arbitration is guided by contract principles, the reverse is not also true: a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party.[99]

Therefore, the first variant fact setting that Defendants argue should estop the Individual Plaintiffs and bind them to the Danzig Agreement's arbitration clause does not apply.

---

[94] *Id*. (quoting *Goldman*, 173 Cal.App.4th at 220) (emphasis added).

[95] 173 Cal.App.4th 209 (2009).

[96] 705 F.3d 1122 (9th Cir. 2013).

[97] *Murphy*, 724 F.3d at 1229; *Kramer*, 705 F.3d at 1128; *Goldman*, 173 Cal.App.4th at 217-18.

[98] 362 P.3d 295.

[99] *Id*. (quoting *Bridas S.A.P.I.C*, 345 F.3d at 361) (emphasis in original).

Defendants also argue a second line of precedent should apply to estop the Individual Plaintiffs from avoiding the Boston Arbitration. The Second Circuit Court of Appeals in *American Bureau of Shipping v. Tencara Shipyard S.P.A.* held that a *signatory plaintiff* may compel arbitration of its claims against a *nonsignatory defendant* when the nonsignatory defendant has received "direct benefits" from a contract containing an arbitration clause.[100] However, this authority is contrary to Utah law, not persuasive, and inapplicable to the facts of this case.

The form of nonsignatory estoppel recognized in *American Bureau of Shipping* is the inverse of the "direct benefits" form of nonsignatory estoppel recognized in Utah. In *Ellsworth v. American Arbitration Association*, the Utah Supreme Court recognized that a *signatory defendant* may compel arbitration of claims brought against it by a *nonsignatory plaintiff* when the nonsignatory plaintiff has received direct benefits from the contract on which it is suing.[101] The Utah Supreme Court cited to *American Bureau of Shipping* when initially discussing the issue, but ultimately held that "direct benefits" nonsignatory estoppel is to be "employed only when the nonsignatory sues the signatory on the agreement after receiving 'direct benefits' but seeks to avoid arbitration."[102] It does not apply to "a nonsignatory who is not suing on the contract and who has not received direct benefits from the contract."[103] Thus, *American Bureau of Shipping* is contrary to Utah law, even though it was cited in *Ellsworth*.

Additionally, the authority the Second Circuit relied on in *American Bureau of Shipping* does not support its holding. *American Bureau of Shipping* cites to *Thomson-CSF, S.A. v.*

---

[100] 170 F.3d 349, 353 (2d Cir. 1999).

[101] 148 P.3d at 989

[102] *Id*.

[103] *Id*.

*American Arbitration Association*[104] for the proposition that a signatory plaintiff may compel arbitration of its claims against a nonsignatory defendant who received direct benefits from a contract. But *Thomson-CSF, S.A.* and the authority it relies on involve the inverse—where *nonsignatory plaintiffs* sue *signatory defendants*, and the signatory defendants seek to compel arbitration based on the direct benefits the *nonsignatory plaintiffs* received from contracts containing arbitration clauses.[105] *Thomson-CSF, S.A.* does not apply estoppel to a nonsignatory who does not make a claim under the agreement containing the arbitration clause. *American Bureau of Shipping* does not discuss or analyze the principles of nonsignatory estoppel or why the analysis of *Thomson-CSF, S.A.* applies to its differing fact setting. Thus, *American Bureau of Shipping* is not persuasive.

Even if a direct benefits analysis were applied in our case, Defendants have not identified any direct benefits the Individual Plaintiffs received from the Danzig Agreement. "Direct benefits estoppel applies when a nonsignatory 'knowingly exploits the agreement containing the arbitration clause.'"[106] "The benefits must be direct—which is to say, flowing directly from the agreement."[107] Defendants baldly assert that that Danzig Agreement was part of a larger set of agreements and transaction which allowed the Individual Plaintiffs to be installed as directors and officers of Inception Mining, Inc.[108] And Defendants conclude that as shareholders, directors, and officers of Inception Mining, Inc., the Individual Plaintiffs directly received the

[104] 64 F.3d 773, 778-79 (2d Cir. 1995).

[105] *Id*. (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993)).

[106] *Bridas S.A.P.I.C*, 345 F.3d at 362 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 f.3d 187, 199 (3d Cir. 2001)); *accord Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1306 (10th Cir. 2017).

[107] *MAG Portfolio Consult, GMBH v. Merlin Biomed Group, LLC*, 268 F.3d 58, 61 (2d Cir. 2001).

[108] Response at 27.

benefits that Gold American Mining Corp., and later Inception Mining, Inc., received from the Danzig Agreement.[109] These benefits do not flow directly from the Danzig Agreement to the Individual Plaintiffs. Rather, any benefits the Individual Plaintiffs received are indirect, *i.e.*, "where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself."[110] Therefore, the second novel form of nonsignatory estoppel argued by Defendants to bind the Individual Plaintiffs to the Danzig Agreement's arbitration clause cannot apply on the facts in this record.

Because the Individual Plaintiffs are not parties to the Danzig Agreement and did not agree to be bound by its arbitration clause, and because the Individual Plaintiffs cannot be bound by the contract's arbitration clause through agency or estoppel, Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration.

### The Individual Plaintiffs will suffer irreparable injury if the Boston Arbitration is not stayed as to them

"[P]urely speculative harm does not amount to irreparable injury[.]"[111] "An 'irreparable harm requirement is met if a plaintiff demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[112] Therefore, "a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative" and has met its burden to obtain a preliminary injunction.[113]

---

[109] *Id.*

[110] *Ellsworth*, 148 P.3d at 989 (citing *MAG Portfolio Consult,* 268 F.3d at 61).

[111] *Greater Yellowstone Coal.*, 321 F.3d at 1258.

[112] *Id.* (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000)) (emphasis in original).

[113] *Id.*

Courts of the District of Utah have found that "the injury to a party who is forced to submit to arbitration when it did not agree to do so constitutes *per se* irreparable harm[.]"[114] The rationale is that the party "will be required to participate in discovery and resolution of a case in a forum lacking the substantive and procedural safeguards provided in our courts."[115] Moreover, because "court[s] will set [an arbitrator's] decision aside only in very unusual circumstances[,]"[116] forcing a party to submit to arbitration severely limits the scope of a court's review of that party's claims and defenses. Therefore, "the time, energy, costs and fees associated with defending an unnecessary arbitration, as well as the potential cost of setting aside an unfavorable arbitration result, rise to the level of 'irreparable harm.'"[117]

This rationale is persuasive. Because Plaintiffs have shown a substantial likelihood of success on the merits of their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration, they will suffer irreparable harm if the Boston Arbitration is not stayed pending a final determination as to whether the Individual Plaintiffs are proper parties to the Boston Arbitration.

**The threatened injury to the Individual Plaintiffs
if the Boston Arbitration is not stayed outweighs any injury to Defendants by a stay**

In analyzing whether the balance of hardships favors the moving party, a court must determine whether the identified irreparable harm outweighs the harm to the opposing party if a preliminary injunction is granted.[118] Therefore, the question is whether the irreparable harm of

---

[114] *Monavie, LLC v. Quixtar, Inc.*, 741 F.Supp.2d 1227, 1242 (D. Utah 2009); *accord UBS Bank USA v. Hussein*, 2014 WL 1600375, *4 (D. Utah Apr. 21, 2014); *Orchard Sec., LLC v. Pavel*, 2013 WL 4010228, *5 (D. Utah Aug. 6, 2013).

[115] *UBS Bank USA*, 2014 WL 1600375, *4; *Orchard Sec., LLC*, 2013 WL 4010228, *5.

[116] *First Options of Chicago, Inc.*, 514 U.S. at 942.

[117] *Monavie, LLC*, 741 F.Supp.2d at 1241.

[118] *Fish v. Kobach*, 840 F.3d 710, 754 (10th Cir. 2016).

forcing the Individual Plaintiffs to submit to arbitration when they did not agree to do so outweighs the harm that a preliminary injunction staying the Boston Arbitration would have on Defendants.

Defendants do not identify any harm they would suffer if the Boston Arbitration is stayed until this action determines whether the Individual Plaintiffs are proper parties to the Boston Arbitration. Plaintiffs do not argue that the Boston Arbitration is improper as to Inception Mining, Inc., so a preliminary injunction staying the Boston Arbitration would be limited to only Danzig, Ltd.'s claims against the Individual Plaintiffs. And the stay would simply preserve the status quo between Danzig, Ltd. and the Individual Plaintiffs as of the "last peaceable uncontested status existing between the parties before the dispute developed[,]" *i.e.*, prior to Danzig, Ltd.'s initiation of the Boston Arbitration.[119]

Defendants do argue that entering a *permanent* injunction regarding the Boston Arbitration will cause them harm by forcing them to litigate the same issues twice—once in the arbitration against Inception Mining, Inc. and once in court against the Individual Plaintiffs.[120] This inefficiency arises because "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[121] "[T]he basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, are enforced according to their terms, and according to the intentions of the parties."[122] Therefore, Defendants' argument is not compelling.

---

[119] *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1260 (10th Cir. 2005) (internal quotations omitted).

[120] Response at 29.

[121] *Howsam*, 537 U.S. at 83 (internal quotations omitted).

[122] *First Options of Chicago, Inc.*, 514 U.S. at 947 (internal quotations omitted).

In balancing the equities, the irreparable harm of forcing the Individual Plaintiffs to submit to arbitration to which they did not agree outweighs any harm to Defendants caused by a preliminary stay of the Boston Arbitration.

### Staying the Boston Arbitration as to the Individual Plaintiffs is not adverse to the public interest

There is a "liberal federal policy favoring arbitration agreements."[123] However, it is equally important policy that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[124] "Forcing parties to arbitrate when they did not agree to arbitrate would generate powerful disincentives to participate in arbitration and would lower the public's confidence in arbitration as an avenue for dispute resolution."[125]

A preliminary injunction staying the Boston Arbitration as to the Individual Plaintiffs serves the public interest. The stay minimizes the risk that the Individual Plaintiffs will suffer irreparable harm from arbitrating a dispute they did not agree to arbitrate. Therefore, a preliminary injunction is not adverse to the public interest.

### No bond is required of Plaintiffs for the preliminary injunctive relief

Under Rule 65(c) of the Federal Rules of Civil Procedure, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined[.]"[126]

---

[123] *Howsam*, 537 U.S. at 83 (internal quotations omitted).

[124] *Id*. (internal quotations omitted).

[125] *Orchard Sec., LLC*, 2013 WL 4010228, *5 (citing *Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, 2012 WL 113400, *6 (D. Md. Jan. 12, 2013); *Berthel Fisher & Co. Fin. Servs., Inc. v. Larmon*, 2011 Wl 3294682, *8 (D. Minn. Aug. 1, 2011))

[126] Fed. R. Civ. P. 65(c).

Neither party has identified any specific costs or damages that may accrue to Defendants from the preliminary injunction. While Danzig, Ltd.'s claims against the Individual Plaintiffs may be delayed by the injunctive relief, that delay is inherent in a battle fought on two fronts and does not result from the stay but from the contracts. The delay until resolution of the final decision on a permanent injunction should be minimal and not result in significant costs or damages. Therefore, no bond is required of Plaintiffs for the preliminary injunctive relief.

## ORDER

IT IS HEREBY ORDERED that:

1)      Plaintiffs' Motion for Injunction[127] is MOOT as to Plaintiffs' argument that Defendants' claims under certain contracts are not subject to arbitration in the Boston Arbitration.

2)      Plaintiffs' Motion for Injunction[128] is GRANTED as to Plaintiffs' claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration.

3)      The Boston Arbitration is preliminarily enjoined as to the Individual Plaintiffs. Danzig, Ltd.'s claims against the Individual Plaintiffs in the Boston Arbitration are stayed pending a final determination on Plaintiffs' claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration. This preliminary injunction does not affect the proceedings on Danzig, Ltd.'s claims against Inception Mining, Inc. in the Boston Arbitration.

4)      Defendants are directed to file a brief by no later than Monday, April 30, 2018, showing cause as to why the preliminary injunction should not be made permanent and

---

[127] Docket no. 8, filed Sept. 13, 2017.

[128] *Id.*

declaratory judgment should not be granted in favor of Plaintiffs on their claim that the Individual Plaintiffs are not proper parties to the Boston Arbitration.

Signed April 23, 2018.

BY THE COURT

_____

District Judge David Nuffer